IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

REGINA SMITH,                ) CIV. NO. 04-00091 HG-KSC
                             )
          Petitioner,        )
                             )
     vs.                     ) FINDINGS AND
                             ) RECOMMENDATION TO DENY
                             ) AMENDED PETITION FOR WRIT
JOHN F. PEYTON JR.,          ) OF HABEAS CORPUS
Director, Department of      )
Public Safety, State of      )
Hawai`I, and MILLICENT       )
NEWTON EMBRY, Warden,        )
Mabel Basset Correctional    )
Center,                      )
                             )
          Respondents.       )
_____ )

FINDINGS AND RECOMMENDATION TO DENY
<u>AMENDED PETITION FOR WRIT OF HABEAS CORPUS</u>

     Before the Court is Petitioner Regina Smith's

("Smith") amended petition for writ of habeas corpus

("Amended Petition") filed pursuant to 28 U.S.C. § 2254

("Section 2254").[1]  On October 6, 2006, Respondents John

_____

     [1] On April 21, 2006, Smith withdrew Grounds Three
and Four of her original petition for writ of habeas
corpus ("Petition").  On June 13, 2006, United States
District Judge Helen Gillmor ruled that Smith may
proceed on Grounds One, Two, Five, and Six of her
Petition.  Therefore, the Court will refer to the
instant petition as Smith's "Amended Petition."

1

F. Peyton, Jr., and Millicent Newton Embry
("Respondents" or "the State") filed their Second
Memorandum of Law in Opposition to Petition ("Second
Opposition").  On December 8, 2006, Smith filed her
reply ("Reply").[2]

       In her Amended Petition, Smith asserts the
following four grounds for relief: (1) the state trial
court violated Smith's Fifth, Sixth, and Fourteenth
Amendment Rights to confrontation and due process of
law by admitting hearsay testimony which vouched for
the credibility of the two child victims from a
prosecution witness who did not examine the children
for treatment purposes (Ground One); (2) the trial
court violated clearly established federal law by
permitting testimony as to the "acting out" behavior of
the child witnesses and by permitting the prosecutor to
argue that such acts constituted evidence of sexual
abuse without any expert testimony characterizing the

---

       [2] The Court notes that Smith's Reply was not timely
filed.  However, the Court will consider Smith's Reply
nonetheless.

behavior as such (Ground Two); (3) the trial court violated Smith's right to due process by imposing extended-term and consecutive sentences without considering statutorily required factors (Ground Five); (4) the extended-term sentence imposed upon her violates <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000) (Ground Six).

The Amended Petition was referred to this Court by United States District Judge Helen Gillmor pursuant to Local Rule 72.5 of the Local Rules of the United States District Court for the District of Hawaii ("Local Rules") and 28 U.S.C. § 636(a).  Upon careful consideration of the Amended Petition, the Second Opposition, and the Reply, this Court FINDS AND RECOMMENDS that the Amended Petition be DENIED.

<u>BACKGROUND AND PROCEDURAL HISTORY</u>

The relevant background facts in this case are set forth in Judge Gillmor's Order Adopting in Part Magistrate Judge's Findings Regarding Petition for Writ of Habeas Corpus ("June 13, 2006 Order").  The Court incorporates those background facts as follows.

On September 29, 1993, a jury found Smith
guilty of the sexual assault of her minor daughters,
Alisha and Jana, between January 1, 1990, and July 20,
1991.  Smith was convicted of five counts of sexual
assault in the first degree, in violation of Hawaii
Revised Statutes ("H.R.S.") § 707-730(1)(b), and five
counts of sexual assault in the third degree, in
violation of H.R.S. § 707-732(1)(b).

On November 29, 1993, the Circuit Court of the
First Circuit ("circuit court" or "trial court")
granted the State's motion to impose an extended term
of imprisonment on Smith, pursuant to H.R.S. § 706-
662(4)(a) and (b).  The circuit court found that Smith
was a "multiple offender" because she had been
convicted of five class A and five class C felonies.
The circuit court further found that an extended term
of imprisonment was necessary for the protection of the
public.

The trial judge enumerated several factors for
her decision, specifically, Smith's: (1) "poor
prognosis for positive behavioral changes;" (2) "utter
lack of victim empathy" which posed "a danger to the

4

community;" and (3) "extensive history and admission of substance abuse." She also noted the "trauma and the emotional and irreparable injury" to Smith's children, and her abuse of her trust to them. She then sentenced Smith to life with the possibility of parole for each of the first degree sexual assault charges, to be served consecutively, and ten years for each of the third degree sexual assault charges, to be served concurrently with all other sentences.

Smith appealed, and on January 13, 1997, the Hawaii Supreme Court affirmed the judgment of conviction by summary disposition order. Smith filed a motion for reconsideration on January 27, 1997, which was denied. Notice of Judgment and Appeal was filed on January 31, 1997. Smith did not seek a writ of certiorari with the United States Supreme Court.

On May 6, 1997, Smith filed a Hawaii Rules of Penal Procedure ("H.R.P.P.") Rule 35 motion for correction or reduction of sentence in the circuit court. Smith's Rule 35 motion was denied on April 13, 1998. She did not appeal this decision.

On January 30, 1998, Smith filed her first

federal petition for writ of habeas corpus, before a decision in her H.R.P.P. Rule 35 motion was issued. See Smith v. Kaneshiro, Civ. No. 98-00092. This petition was dismissed without prejudice as unexhausted on January 3, 2001.

On April 1, 1998, while both her Rule 35 motion and her federal habeas petition were still pending in their respective courts, Smith filed her first H.R.P.P. Rule 40 petition ("First Rule 40 Petition") for post-conviction relief. This petition was ultimately dismissed by the Hawaii Supreme Court on procedural grounds, on April 24, 2002.

Smith filed a second Rule 40 Petition on July 3, 2002 ("Second Rule 40 Petition"). The circuit court denied the Second Rule 40 Petition on March 20, 2003. Smith appealed, and the Hawaii Supreme Court affirmed the circuit court on February 2, 2004.

On February 6, 2004, Smith filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 in this Court ("Petition").

On June 1, 2004, the State of Hawaii filed its Answer to the Petition.

6

On May 12, 2005, a United States Magistrate
Judge issued a Findings and Recommendation to Dismiss
Petition for Writ of Habeas Corpus ("F&R").

On August 30, 2005, after an extension of time,
Smith filed "Petitioner's Response to Magistrate's
Findings and Recommendation to Dismiss Petition for
Writ of Habeas Corpus filed on May 12, 2005"
("Objection").

On April 6, 2006, having reviewed and
considered the F&R and Objection, the Court entered a
Minute Order directing Petitioner to identify the exact
place in which she raised Grounds Three and Four in her
opening brief to the Hawaii Supreme Court and to brief
the issue of whether Grounds Three and Four are
procedurally barred.

On April 21, 2006, Smith filed "Petitioner's
Response to Court's Minute Order Issued on April 6,
2006."  Smith responded to the April 6, 2006 Minute
Order by acknowledging that Grounds Three and Four were
not in fact raised in her opening brief to the Hawaii
Supreme Court as previously represented and by
withdrawing Grounds Three and Four of her Petition.

I.   <u>Direct Appeal</u>

On direct appeal, Smith argued that the trial court reversibly erred by: (1) admitting testimony about the victims' subsequent, allegedly "sexualized," behavior and by allowing the prosecutor to argue that this behavior was evidence of sexual abuse, without establishing this theory through expert testimony; (2) permitting the state's expert medical witness to testify about the victims' hearsay statements regarding their alleged sexual abuse and the identity of their abusers; (3) allowing the state's medical expert to offer his opinion that the victims' statements were consistent with his medical findings; (4) failing to instruct the jury that Smith could not be found guilty of sexual assault for actions taken in the normal care of the children's hygiene; and (5) sentencing Smith to an extended term of sentence.

The Hawaii Supreme Court affirmed Smith's conviction by summary disposition order on January 13, 1997, and denied Smith's motion for reconsideration on January 30, 1997.

II.   <u>First Rule 40 Petition</u>

As stated above, Smith filed her First Rule 40 Petition on April 1, 1998.  Smith argued: (1) the ineffective assistance of trial and appellate counsel; (2) the "denial of certain rights provided under Hawaii Court Rules," that impeded her ability to file a H.R.P.P. Rule 40 petition; and (3) the trial court's improper allowance of a prosecution witness's "bolstering and vouching for" the victim's credibility. On February 22, 2001, the circuit court denied Smith's First Rule 40 Petition.

Smith appealed, filing a "Petition for Writ of Certiorari to the Circuit Court of the First Circuit of the State of Hawai`I" in the Hawaii Supreme Court ("State Pet. for Cert.").  On appeal, Smith alleged that: (1) her "Fourth (sic) [and] Sixth Amendment right[s] to confrontation and due process" were violated by admission of improper hearsay testimony; and (2) the trial court erred by admitting certain testimony without accompanying, verifying expert testimony.

On October 1, 2001, the Hawaii Supreme Court ordered that Smith's State Pet. for Cert. be filed as

9

her Opening Brief in Sup. Ct. No. 24155.  The Hawaii Supreme Court also ordered that Smith serve, within thirty days after entry of the order, copies of her Opening Brief on the State and submit two copies of the document to the clerk.

Smith failed to comply with the October 1, 2001 Order.  On December 11, 2001, the Hawaii Supreme Court granted the State's motion for relief from default and again ordered Smith to serve a copy of the Opening Brief on the State.  The court also directed Smith to explain why she had failed to comply with the October 1, 2001 Order.  The court warned Smith that the failure to file a response or to show good cause for her failure could result in dismissal of her appeal.  After granting an extension of time to respond to the December 11, 2001 Order, the court ultimately dismissed Smith's appeal for her failure to serve a copy of the Opening Brief on the prosecution and to timely respond to the order to show cause.  Thus, the Hawaii Supreme Court did not reach the merits of Smith's First Rule 40 Petition.

III.   <u>Second Rule 40 Petition</u>

On July 3, 2002, Smith filed her Second Rule 40 Petition in SPP No. 02-1-0051.  Smith argued that the trial judge's imposition of enhanced sentencing was illegal because the determination of whether she was a danger to the community should have been determined by a jury.  Smith claimed that she had not previously presented this issue because she was unaware of "new state and federal law prohibiting a judge to enhance a sentence based upon facts that should have been decided by a jury."  She also stated that she did not have adequate access to legal materials and that she had been denied the appointment of an attorney.

Although Smith had not *explicitly* raised the issue, the State concluded that Smith was making a veiled claim for relief pursuant to Apprendi v. New Jersey, 530 U.S. 466 (2000), and in its Answer, argued that Apprendi did not apply to Smith's conviction and sentence.

On March 20, 2003, the circuit court denied Smith's Second Rule 40 Petition.  The circuit court held that Hawaii's sentencing scheme, which allows for extended sentences when certain statutory criteria are

11

met, does not violate the "constitutional concerns confronted in <u>Apprendi</u>." Cir. Ct.'s Find'gs. of Fact, Concls. of Law and Ord. Dny'g Pet. for Post-Conv. Rlf., <u>State v. Smith</u>, SPP No. 02-1-51.

Smith appealed this decision on August 5, 2003. In her Opening Brief, Smith explicitly argued that her constitutional rights, as guaranteed by both the United States and Hawaii constitutions had been violated, pursuant to <u>Apprendi</u> and its progeny. Smith alleged that the trial judge had imposed an extended term of imprisonment without a jury determination of whether the imposition of an extended term was necessary for the protection of the public. The Hawaii Supreme Court denied Smith's appeal on February 2, 2004, by summary disposition order. Notice and Judgment of Appeal was filed on February 27, 2004.

<u>DISCUSSION</u>

In her Amended Petition, Smith, a state prisoner, requests relief from her consecutive life terms sentence and concurrent ten-year extended terms sentence pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254. Under

the AEDPA, a person in state custody must first exhaust her state remedies before filing a habeas corpus petition in federal court. <u>See</u> 28 U.S.C. § 2254(b)(1)(A).  In addition, the AEDPA requires that a person in custody file an application for a writ of habeas corpus within one year after the judgment under attack becomes "final by the conclusion of direct review or the expiration of the time for seeking review." 28 U.S.C. § 2244(d)(A).

        In Judge Gillmor's June 13, 2006 Order, she ruled that Smith had exhausted her state remedies with regard to Grounds One, Two, Five, and Six of her Petition.  On February 2, 2004, the Hawaii Supreme Court denied Smith's appeal by summary disposition order.  Notice and Judgment of Appeal was filed on February 27, 2004.  Smith filed her Petition on February 6, 2004.  Therefore, Smith's Petition is timely.  Having found that Smith has exhausted her state remedies and filed her Petition within the one-year statute of limitations period, the Court will address the merits of Smith's Petition.

13

Section 2254(d) provides:

> An application for a writ of habeas
> corpus on behalf of a person in
> custody pursuant to the judgment of a
> State Court shall not be granted with
> respect to any claim that was
> adjudicated on the merits in State
> Court proceedings unless the
> adjudication of the claim-
> (1) resulted in a decision that was
> contrary to, or involved an
> unreasonable application of, clearly
> established Federal Law, as determined
> by the Supreme Court of the United
> States; or
> (2) resulted in a decision that was
> based on an unreasonable determination
> of the facts in light of the evidence
> presented in the State court
> proceeding.

28 U.S.C. § 2254(d).

For purposes of Section 2254(d)(1), "clearly established federal law" is the governing law set forth by the Supreme Court at the time the state court renders its decision. Lockyer v. Andrade, 538 U.S. 63, 71 (2003). A state court decision is "contrary to" clearly established federal law "if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a

14

controlling case, but nonetheless reaches a different result." <u>Clark v. Murphy</u>, 331 F.3d 1062, 1067 (9th Cir.) <u>cert. denied</u>, 540 U.S. 968 (2003).

Under the "unreasonable application" clause, a court may grant habeas relief when "the state court identifies the correct governing legal rule from a [Supreme Court] case, but unreasonably applies it to the facts of the particular case," or when "the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." <u>Williams v. Taylor</u>, 529 U.S. 362, 407 (2000)(citation omitted). In addition, the "unreasonable application" clause requires the state court decision to be "objectively unreasonable" rather than merely "incorrect or erroneous." <u>Lockyer</u>, 538 U.S. at 75. This is a "highly deferential standard for evaluating state-court rulings," <u>Lindh v. Murphy</u>, 521 U.S. 320, 333 n.7 (1997), and "demands that state court decisions be given the benefit of the doubt." <u>Woodford v.</u>

Visciotti, 537 U.S. 19, 24 (2002)(per curiam).

Accordingly, the AEDPA requires federal courts to give deference to state court decisions underlying a Section 2254 petition with regards to both law and facts.  See Williams, 529 U.S. at 400; Silva v. Woodford, 279 F.3d 825, 835 (9th Cir. 2002).  Under the AEDPA, "state court findings of fact are presumed correct unless rebutted by clear and convincing evidence."  See 28 U.S.C. § 2254(e)(1); Gonzalez v. Pliler, 341 F.3d 897, 903 (9th Cir. 2003).  A petitioner may be entitled to relief where a state court's factual determination was based on an unreasonable evidentiary foundation.  See 28 U.S.C. 2254(d)(2); Gonzalez, 341 F.3d at 903.  "Even in the context of federal habeas, deference does not by definition preclude relief.  A federal court can disagree with a state court's credibility determination and, when guided by the AEDPA, conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence."  Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

16

In her Amended Petition, Smith asserts the following four grounds for relief: (1) the state trial court violated Smith's Fifth, Sixth, and Fourteenth Amendment Rights to confrontation and due process of law by admitting hearsay testimony which vouched for the credibility of the two child victims from a prosecution witness who did not examine the children for treatment purposes (Ground One); (2) the trial court violated clearly established federal law by permitting testimony as to the "acting out" behavior of the child witnesses and by permitting the prosecutor to argue that such acts constituted evidence of sexual abuse without any expert testimony characterizing the behavior as such (Ground Two); (3) the trial court violated Smith's right to due process by imposing extended-term and consecutive sentences without considering statutorily required factors (Ground Five); (4) the extended-term sentence imposed upon her violates Apprendi v. New Jersey, 530 U.S. 466 (2000) (Ground Six).  The Court will address each of these grounds for relief in turn.

1.   <u>Admission of Dr. Bidwell's Testimony Was Not
     Contrary to, or an Unreasonable Application of,
     Clearly Established Federal Law</u>

     In her Amended Petition, Smith argues that the
trial court's admission of Dr. Bidwell's testimony
recounting Alisha and Jana's out-of-court statements
violated her Fifth, Sixth, and Fourteenth Amendment
rights to confrontation and due process.  Specifically,
Smith argues that (1) Dr. Bidwell did not provide
"medical treatment" or "diagnosis" to the children
within the meaning of Hawaii Rule of Evidence
("H.R.E.") 803(b)(4); (2) Dr. Bidwell should not have
been permitted to testify regarding the credibility of
the children and the identity of the person(s) who
committed the offense; and (3) the admission of Dr.
Bidwell's testimony undermined the fundamental fairness
of the verdict.  Smith's Memorandum in Support of
Amended Petition at 29-33.

     The Court must determine whether the state
court's admission of Dr. Bidwell's testimony violated
Smith's Fifth, Sixth, and Fourteenth Amendment rights
to confrontation and due process.

The Sixth Amendment's Confrontation Clause, which is made applicable to the States through the Fourteenth Amendment, provides: "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause provides two types of protections for a criminal defendant: (1) the right to physically face those who testify against him; and (2) the right to conduct cross-examination. Coy v. Iowa, 487 U.S. 1012, 1017 (1988) (citations and internal quotation marks omitted). If the declarant of an out-of-court statement is testifying at trial and subject to full and effective cross-examination, then the Sixth Amendment's Confrontation Clause is not violated. See California v. Green, 399 U.S. 149, 158-59 (1970). If the declarant of an out-of-court statement is unavailable at trial, then his or her statements may still be admissible if an adequate "indicia of reliability" is established. Generally, reliability can be inferred where the out-of-court statement falls within a "firmly rooted hearsay

19

exception" or is shown to be supported by
particularized guarantees of trustworthiness.  <u>Idaho v.
Wright</u>, 497 U.S. 805, 814-15 (1990).

The Due Process Clause of the Fifth Amendment,
applicable to the states through the Fourteenth
Amendment, provides that "[n]o person shall ... be
deprived of life, liberty, or property, without due
process of law...." U.S. Const. amend. V.  In analyzing
a due process claim, a court must consider whether the
action complained of so fatally infected the trial as
to render it fundamentally unfair.  <u>See Kealohapauole
v. Shimoda</u>, 800 F.2d 1463, 1465 (9th Cir. 1986).  The
Supreme Court has held that the Due Process Clause has
limited operation and has defined the category of
infractions that violate fundamental fairness very
narrowly.  <u>Dowling v. United States</u>, 493 U.S. 342, 352-
53 (1990)(citation omitted).  When determining whether
a due process violation has occurred, courts "are to
determine only whether the action complained of ...
violates those fundamental conceptions of justice which
lie at the base of our civil and political

institutions, and which define the community's sense of
fair play and decency." Id. at 353 (internal quotation
marks and citations omitted).

    A.  <u>Medical Diagnosis Exception to the Hearsay
Rule</u>

      In her Amended Petition, Smith argues that Dr.
Bidwell should not have been able to testify as to
Alisha and Jana's out-of-court statements because
Bidwell's testimony did not fall under a hearsay
exception set forth in the Hawaii Rules of Evidence.
Smith's Memorandum in Support of Amended Petition at 33.
In particular, Smith argues that Dr. Bidwell did not
provide "medical treatment" or "diagnosis" to Alisha and
Jana within the meaning of H.R.E. 803(b)(4), which
permits hearsay testimony made for the purposes of
medical diagnosis or treatment.  Id. at 33-34.  Smith
asserts that Dr. Bidwell did not administer any medical
treatment to the children, rather, Dr. Bidwell was
employed by the Sex Abuse Treatment Center ("SATC") to
provide medical legal evaluations of patients who come
into the hospital with an alleged history of sexual

21

abuse.  Id. at 34.   Smith argues that the trial court improperly permitted Dr. Bidwell to testify regarding information he obtained from the children and to claim that their statements were "consistent with his medical examination." Id. at 35.   Smith relies on <u>Webb v. Lewis</u>, 44 F.3d 1387, 1390-91 (9th Cir. 1994) for the proposition that where a physician is being consulted by the state and conducting his or her examination for law enforcement purposes, he or she is not prescribing for the victim as her patient. Id. at 36.   Smith asserts that the trial record demonstrates that Dr. Bidwell examined the children solely for the purposes of testifying in court as to a diagnosis. Id.

Respondents claim that the trial court's ruling admitting Dr. Bidwell's testimony was not contrary to, or an unreasonable application of, "clearly established [Confrontation Clause] law, as determined by the Supreme Court of the United States[.]"  Respondents' Second Memorandum in Opposition at 56.   Respondents rely on <u>Bradshaw v. Richey</u>, 546 U.S. 74 (2005) for the proposition that a state court's interpretation of state

law binds a federal court sitting in habeas corpus. Id. at 57. Respondents additionally argue that Smith's right to confrontation was not violated in this case because both Alisha and Jana testified at trial and were subjected to full and effective cross-examination, and therefore Dr. Bidwell's testimony did not violate the Confrontation Clause. Id. at 53-54.

In her Reply, Smith argues that there was no opportunity for cross examination of Alisha and Jana concerning Dr. Bidwell's testimony because Alisha and Jana testified before Dr. Bidwell took the witness stand and were not questioned about statements they made to Dr. Bidwell. Smith's Reply at 2-4. Smith argues that pursuant to <u>Crawford v. Washington</u>, 541 U.S. 36 (2004), Dr. Bidwell's testimony was improper and violated clearly established federal law. Id. at 4-5.

The trial court's factual determination that the children's statements to Dr. Bidwell were made for purposes of medical diagnosis or treatment is presumed correct and can be rebutted only by "clear and convincing evidence." <u>See</u> 28 U.S.C. § 2254(e)(1);

23

Bradshaw v. Richey, 546 U.S. 74.  In State v. Yamada, 57
P.3d 467, 480 (Haw. 2002), the Hawaii Supreme Court held
that H.R.E. 804(b)(4) permits "the admission of
statements made solely for the purpose of diagnosis,
insofar as reasonably pertinent to diagnosis, even if
made in anticipation of litigation."  In this case, the
record indicates that the trial court found that Dr.
Bidwell examined Alisha and Jana in order to diagnose
them as part of his work at the SATC, and in
anticipation for litigation.  The Court finds that Smith
has failed to meet her burden of rebutting the trial
court's factual finding by clear and convincing
evidence.

        Even assuming arguendo that Smith could
establish that Dr. Bidwell's statements were improperly
admitted under the medical diagnosis exception to the
hearsay rule, the Court finds that there is no
Confrontation Clause violation in this case because
Alisha and Jana, the declarants, were both available for
cross-examination at trial.  See United States v.
Valdez-Soto, 31 F.3d 1467, 1470 (9th Cir. 1994)

cert. denied, 514 U.S. 1113 (1995)("[w]e are aware of no Supreme Court case, or any other case, which holds that introduction of hearsay evidence can violate the Confrontation Clause where the putative declarant is in court, and the defendants are able to cross-examine him"). Crawford, the case relied upon by Smith, is distinguishable from the instant case because in Crawford the declarant was unavailable to testify and be cross-examined as to her previously recorded statements. 541 U.S. 36.

The Court finds Smith's argument that there was no opportunity for cross examination of Alisha and Jana concerning Dr. Bidwell's testimony, because Alisha and Jana testified before Dr. Bidwell took the witness stand, to be unpersuasive and unsupported by law. At trial, Respondents had ample opportunity to question both Alisha and Jana and Dr. Bidwell. In addition, Respondents have not stated that they attempted to recall or were blocked from recalling Alisha and Jana to the stand after Dr. Bidwell testified. Accordingly, the Court finds that the admission of Dr. Bidwell's

testimony was not in violation of the Confrontation
Clause.

### B. Testimony Regarding the Credibility of the Children and the Identities of Who Had Committed the Offense

Smith argues that even if the exception set
forth in HRE 803(b)(4) did apply, Dr. Bidwell's
testimony should have been limited to the results of his
medical diagnosis.  Smith's Memorandum in Support of
Amended Petition at 39.  Specifically, Smith asserts
that Dr. Bidwell should not have been permitted to (1)
state that the results of his examination were
consistent with what the children had said; or (2) state
that the children had specifically informed him that
Smith was the culprit. Id. at 40.  Smith argues that
pursuant to United States v. Awkard, 597 F.2d 667, 671
(9th Cir. 1979), credibility is an issue for the jury to
determine.  Id.  Smith also argues that the hearsay
testimony regarding the identity of the culprit was
improperly admitted since nothing in the record
indicates that Dr. Bidwell told the children that the
identity of the abuser was important to diagnosis and

treatment or that the children manifested such an understanding.  Id. at 54.

Respondents assert that the trial court's finding that Dr. Bidwell's testimony was admissible pursuant to H.R.E. 803(b)(4) is presumed correct and can be rebutted only by "clear and convincing evidence." Respondents' Second Memorandum in Opposition at 59-60. Respondents claim that Smith has failed to produce such evidence.  Id.  Respondents argue that Dr. Bidwell's testimony that the girls' medical histories were consistent with his physical findings was not a comment on their credibility.  Id. at 67.  Further, Respondents claim that the trial court gave a limiting instruction eliminating any danger that the jury might have interpreted Dr. Bidwell's testimony as a comment on the girls' credibility.[3] Id. at 68.  Finally, Respondents

---

[3] The following limiting instruction was given: "[t]he jury will be instructed to know that the current state of the law and in the State of Hawaii is that we are prohibited from entertaining or hearing any expert medical opinion as to a victim or a child victim's credibility in a case of such child sex abuse cases. Please remember that the defendants are presumed innocent unless and until they are proven guilty beyond a reasonable doubt.

argue that numerous courts have held that statements
identifying a sexual abuser are "reasonably pertinent to
treatment or diagnosis." Id. at 63.

Even assuming that the trial court's
evidentiary rulings were erroneous, "failure to comply
with the state's rules of evidence is neither necessary
nor a sufficient basis for granting habeas relief."
Jammal v. Van De Kamp, 926 F.2d 918, 919 (9th Cir.
1991). "Only if there are *no* permissible inferences the
jury may draw from the evidence can its admission
violate due process. Even then, the evidence must 'be
of such quality as necessarily prevents a fair trial.

---

I wish to issue this cautionary instruction to the jury
in the light of my overruling the defense objection to
preclude the subsequent testimony on what the
independent medical findings might have been with
respect to the patient in question. So as not to
confuse you, you are prohibited from considering any
so-called expert medical opinion on the believability
[sic] or credibility of a patient, in this case Alisha
and subsequently perhaps Jana.

However, I am allowing the question under what we call
the 803(b)(4) exception to the hearsay rule which
specifically permits the witness to testify as to what
statements were made for purposes of his diagnosis or
his treatment of the patient in question. So that's
specifically for purposes of medical diagnosis or
treatment.

Id. at 920 (citation omitted)(emphasis in original).

Regarding Dr. Bidwell's statement that the results of his examination were consistent with what the children had said, the Court finds that this statement did not render Smith's trial fundamentally unfair. First, the trial judge instructed the jury that Dr. Bidwell's testimony should not be considered with regard to the children's credibility.  Second, the Court finds that there were permissible inferences that the jury could make based on Dr. Bidwell's testimony that do not relate to the credibility of the children.

Regarding Dr. Bidwell's statements that the children had identified Smith as the culprit, the Court similarly finds that these statements did not render Smith's trial fundamentally unfair.  The Ninth Circuit has found that statements regarding the identity of a sexual abuser may be relevant to medical treatment or diagnosis.  See, e.g., United States v. George, 960 F.2d 97 (9th Cir. 1992); People of Territory of Guam v. Ignacio, 10 F.2d 97 (9th Cir. 1993).  Smith has failed to rebut by clear and convincing evidence the trial

court's factual finding that the evidence regarding the
identity of the children's sexual abuser is relevant to
their medical diagnosis.

Therefore, the Court finds that the admission
of Dr. Bidwell's testimony indicating that (1) the
results of his examination were consistent with what the
children had said; and (2) that the children had
specifically informed him that Smith was the culprit,
did not violate Smith's due process rights. See Dowling,
493 U.S. at 352-53.

C. Fundamental Fairness of the Verdict

Smith argues that Dr. Bidwell's testimony
substantially contributed to the verdict in this case.
Smith's Memorandum in Support of Amended Petition at 56.
Smith asserts that the only substantive evidence that
Smith had sexually abused the girls was the girls' own
testimony, which was improperly buttressed by Dr.
Bidwell's testimony.  Id.

Respondents argue that given the limited nature
of Dr. Bidwell's testimony, the circuit court's limiting
instruction as to use of his testimony, the fact that

30

the girls had already testified that the specific acts
of abuse they reported to Dr. Bidwell had occurred, and
the extensive cross-examination of the two girls, Dr.
Bidwell's testimony was not so prejudicial as to render
Smith's trial fundamentally unfair.  Respondents' Second
Memorandum in Opposition at 70.

Given that Alisha and Jana testified in this
case and were subject to cross-examination, and
considering the trial court's limiting instruction, the
Court finds that Dr. Bidwell's testimony did not violate
the fundamental fairness of the verdict.  As stated
herein above, the Court cannot say that there were no
permissible inferences that the jury could make based on
Dr. Bidwell's testimony or that Dr. Bidwell's testimony
rendered the trial fundamentally unfair.  In addition,
the trial court's interpretation of state law binds this
Court.  See Bradshaw, 546 U.S. 74. Accordingly, the
Court finds that Dr. Bidwell's testimony was not
contrary to clearly established federal law as set forth
in the Confrontation Clause and the Due Process Clause.

2.  Admission of Testimony of Mazepa and the

31

<u>Prosecutor's Closing Argument Was Not Contrary to, or an Unreasonable Application of, Clearly Established Federal Law</u>

Smith argues that the circuit court's admission of Denise Mazepa's ("Mazepa") testimony regarding Alisha and Jana's "acting out behavior" and the prosecutor's reference to the girls' sexualized behavior during closing argument violated the Confrontation Clause and the Due Process Clause.  Smith's Memorandum in Support of Amended Petition at 60-71.

A.   <u>Mazepa's Testimony</u>

Smith claims that the trial court erred by admitting Mazepa's testimony regarding her observations of Alisha and Jana's "acting out behavior" because the testimony was more prejudicial than probative. Id. In particular, Smith claims that it was reversible error for Mazepa's testimony to be admitted because the prosecution failed to offer expert testimony to explain the significance of the behavior witnessed by Mazepa.[4]

_____

[4] Prior to trial, the state made known its intent to call Dr. Beth Kurren, the children's therapist, as an expert witness in the field of child sexual abuse. Smith's Memorandum in Support of Amended Petition at 60.  However, when trial commenced, Dr. Kurren did not

32

Id. at 62-63.  Smith argues that in a child sex abuse case, it is clear that a jury does not have within its common knowledge or experience the means to identify child behavior as having been caused by or evidencing sexual abuse without the assistance of an expert. Id. at 69.

Respondents assert that the trial judge found Mazepa's testimony regarding her observations of Alisha and Jana's behavior to be relevant.  Respondents' Second Memorandum in Opposition at 74-75.  Respondents argue that the jury could permissibly infer from the girls' "acting out behavior" that: "(1) something terrible of a sexual nature had happened to them; and (2) their allegations of sexual abuse were not the product of a desire to live with Mazepa, jealousy, or the result of being "programmed" by Mazepa and other adults involved in the case" Id. at 77-78.  Respondents claim that

_____

testify, and the trial court permitted the state to make reference to the alleged "sexual acts" observed by Mazepa but prohibited the state from mentioning the expert testimony of Ms. Kurren. Id. at 61 (citing Transcript from hearing dated September 15, 1993 at 23).

Mazepa's testimony was relevant to rebut Smith's attacks regarding the girls' credibility. Id. at 80. Respondents also argue that the probative value of Mazepa's testimony describing the girls' behavior was not beyond the common knowledge of the average layman. Id. at 82.  Furthermore, Respondents maintain that expert testimony was not required in this case because it would have only confirmed what the jurors could already infer from the evidence on their own. Id. at 85.

In Ortiz-Sandoval v. Gomez, 81 F.3d 891, 898 (9th Cir. 1996) (ellipses and quotation marks in original)(citation omitted), the Ninth Circuit stated:

> When a trial court's weighing of prejudice versus probative value is challenged on appeal, the "trial court's exercise of broad discretion will not lightly be disturbed . . . due to its proximity."  This deference is heightened on habeas, where we afford the state trial court's conclusions the presumption of correctness.

Mazepa testified that while giving the girls a bath, she noticed Jana rubbing her vagina with a bar of soap for an excessive period of time.  Respondents' Second Memorandum in Opposition to Amended Petition at

34

73 (citing Transcript of Hearing on September 17, 1993 at 51-52). Mazepa also testified, over the State's objection, that she observed: (1) Jana touching Alisha's vagina while Alisha straddled Jana and both girls were naked on October 12, 1991; (2) Jana touching Alisha's vagina during a bath on November 3, 1991; (3) Jana sitting on the arm of recliner, gyrating repeatedly, on November 12, 1991; (4) Jana putting a McDonald's 'Happy Meals' figurine into her vagina on November 25, 1991; (5) Jana fondling herself while watching television on December 2, and 5, 1991; (6) Jana taking Mazepa's one-and-a-half year old daughter's hand and placing it on Jana's crotch on December 11, 1991; and (7) Jana putting her hand on Mazepa's daughter's crotch "a couple of days later[.]" Id. (citing Transcript of Hearing on September 17, 1993 at 69-71).  Finally, Mazepa testified that the girls suffered from nightmares and that Jana began wetting her bed after sharing her experiences. Id. at 74 (citing Transcript of Hearing on September 17, 1993 at 76-78).

The trial judge entertained Smith's objections

to Mazepa's testimony and set forth reasons for its
admittance.   The trial judge found that Mazepa's
testimony was relevant and that it was for the jury to
decide whether Alisha and Jana's behavior was normal or
not.   In addition, the trial judge found that Mazepa's
testimony was relevant to combat the defense theory that
Alisha and Jana had been coached.   Id. at 75 (citing
Transcript from Hearing on September 20, 1993 at 4-5).
The Court finds that Smith has failed to rebut the trial
judge's factual findings with clear and convincing
evidence.   In addition, the Court cannot say that there
were no permissible inferences the jury could make based
on Mazepa's testimony.   Therefore, in considering the
deference to be afforded to the trial court's
evidentiary rulings, the Court finds that the admission
of Mazepa's testimony did not violate the Due Process
Clause by preventing a fair trial.   See Williams, 529
U.S. at 400 (2000).

        B.   The Prosecutor's Closing Argument

        Smith also argues that by permitting the
prosecutor to argue in his closing argument that Alisha

and Jana's "acting out behavior" was "sexualized behavior" consistent with sexual abuse, the trial court committed reversible error.  Smith's Memorandum in Support of Amended Petition at 69-70.  Smith argues that in effect, the prosecutor was improperly assuming the role of an expert witness during his closing argument, and thus Smith was deprived of her right to cross examine the prosecutor. Id. at 69, 71.

Respondents assert that the prosecutor only made passing references to Jana's bedwetting and a bath incident which led Mazepa to call Child Protective Services.  Respondents' Second Memorandum in Opposition at 86.  Respondents note that the trial judge stated the following during Respondents' rebuttal: "[k]nowing that there is no evidence for the jury from an expert[,] I will permit [the trial prosecutor] to draw reasonable inferences as will the jury depending on credibility of questions to resolve.  So I will overrule [Nakamura's] objection with that caution to the jury." Id. at 88. Respondents assert that the comments made by the prosecutor during closing argument were a fair response

37

to Smith's claims and only constituted a small fraction of his rebuttal argument.  Id. at 89-90.

Prosecutorial misconduct gives rise to a constitutional claim only if the misconduct deprived the defendant of a fair trial.  Greer v. Miller, 483 U.S. 756, 765 (1987).  The relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.  Darden v. Wainwright, 477 U.S. 168, 181 (1986).  The prosecutor's comments must also be considered in the context of the whole trial to properly evaluate its effect on the ability of the jury to evaluate the evidence fairly.  United States v. Young, 470 U.S. 1, 11-12 (1984).  In addition, "[c]ounsel are given latitude in the presentation of their closing arguments, and courts must allow the prosecution to strike hard blows based on the evidence presented and all reasonable inferences therefrom."  Ceja v. Steward, 97 F.3d 1246, 1253 (9th Cir. 1996) (citation and internal quotation marks omitted).

Here, the issue before the Court is whether the

the prosecutor's statements that Alisha and Jana's "sexualized behavior" was consistent with sexual abuse resulted in an unfair trial.  The Court finds that the probative value of Mazepa's testimony regarding the girls' behavior and the reasonable inferences that the prosecutor made based on this testimony was not "beyond the knowledge of the average layman." United States v. Peralta, 941 F.2d 1003, 1009 (9th Cir. 1991); see United States v. Juvenile, 347 F.3d 778, 781 n.1 (9th Cir. 2003)("[a]ge-inappropriate sexual knowledge is a common symptom among sexually abused children, along with other sexualized behaviors, anxiety, depression, withdrawn behavior, somatic complaints, aggression, and school problems." (citing Kathleen A. Kendall-Tackett, Linda Meyer Williams, & David Finkelhor. Impact of Sexual Abuse on Children: A Review and Synthesis of Recent Empirical Studies. 113 Psychological Bulletin 1, 165 (1993)).  The Court notes that expert testimony regarding common symptoms of child abuse would have assisted the jury in evaluating the evidence in this case.  However, the absence of expert testimony, and the

inferences made by the prosecutor based on the lay
testimony, do not render the trial fundamentally unfair
because there were permissible inferences that the
jurors could make based on the evidence presented.
Accordingly, the Court finds that the prosecutor's
reference to Alisha and Jana's behavior and the
inferences he made during his closing argument did not
deprive Smith of her right to a fair trial in violation
of the Due Process Clause.

3.   <u>Smith's Sentence Was Not Contrary to, nor an
     Unreasonable Application of, Clearly Established
     Federal Law</u>

        Smith argues that the trial court improperly
imposed consecutive life sentences without following
Hawaii state procedures and statutes detailing when and
how such a sentence can be imposed.  Smith's Memorandum
in Support of Amended Petition at 72.  In addition,
Smith argues that by imposing an extended-term sentence
upon her, the trial court violated her right to trial by
jury under the Sixth Amendment as enunciated by <u>Apprendi</u>

v. New Jersey, 530 U.S. 466 (2000).  Id. at 82-85.

A.  Due Process Claim

Smith argues that the trial court's failure to adhere to state procedures and statutes amounts to a violation of her due process rights. Id.  Smith asserts that the trial judge imposed consecutive sentences but never explained why consecutive sentences were necessary or considered the factors set forth in H.R.S. § 706-606 as required by Hawaii law.  Id. at 73.  Smith claims that the trial court failed to follow two distinct processes in issuing an extended-term sentence and consecutive sentences pursuant to H.R.S. § 706-606 and H.R.S. § 706-668.5, respectively. Id. at 76-77. Finally, Smith argues that the trial court failed to properly consider factors set forth in H.R.S. § 706-606.[5] Id. at 80.

---

[5] The factors to be considered in imposing a sentence pursuant to H.R.S. § 706-606 are: "(1) The nature and circumstances of the offense and the history and characteristics of the defendant;
 (2) The need for the sentence imposed:
     (a) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
     (b) To afford adequate deterrence to criminal

41

Respondents maintain that the trial court did in fact consider the factors set forth in H.R.S. § 706-606 in imposing an extended term sentence and consecutive sentences.  Respondents' Memorandum in Opposition at 96.  Respondents argue that while the trial judge may not have orally addressed all of the factors set forth in H.R.S. § 706-606, the trial judge was not required to expressly recite its findings on the record for each of the factors. Id. at 98.  Moreover, in the Extended Term Order, the circuit court concluded: "[a]fter applying all of the factors set forth in H.R.S. § 706-606, this court determines that the extended consecutive term imposed is the appropriate sentence in this case." Id. at 99-100 (citation omitted).

————————————————

conduct;
        (c) To protect the public from further crimes of
the defendant; and
        (d) To provide the defendant with needed
educational or vocational training, medical care, or
other correctional treatment in the most effective
manner;
    (3) The kinds of sentences available;
    (4) The need to avoid unwarranted sentence disparities
among defendants with similar records who have been
found guilty of similar conduct.

H.R.S. § 706-606.

Hawaii's consecutive sentence statute, H.R.S. §
706-668.5,[6] directs a court, in determining whether a
sentence should be consecutive or concurrent, to
consider the factors set forth in H.R.S. § 706-606.  In
State v. Sinagoga, 918 P.2d 228, 235 (Haw. 1996), the
Hawaii Supreme Court stated that there is "no
requirement that the court expressly recite its findings
on the record for each of the factors set forth in
H.R.S. § 706-606."  The Court, after reviewing the
transcript of the hearing on November 29, 1993, finds
that the trial judge reviewed the pre-sentence report
and considered many of the factors set forth in H.R.S. §

---

[6] H.R.S. § 706-668.5 provides:
(1) If multiple terms of imprisonment are imposed on a
defendant at the same time, or if a term of
imprisonment is imposed on a defendant who is already
subject to an unexpired term of imprisonment, the terms
may run concurrently or consecutively.  Multiple terms
of imprisonment imposed at different times run
concurrently , unless the court orders of the statute
mandates that the terms run consecutively.  Multiple
terms of imprisonment imposed at different times run
consecutively unless the court orders that the terms
run concurrently.
(2) The court, in determining whether the terms imposed
are to be ordered to run concurrently or consecutively,
shall consider the factors set forth in section 706-
606.

706-606.  In addition, the Extended Term Order issued by the circuit court indicates that the trial judge considered the all of the relevant factors set forth in H.R.S. § 706-606.  Accordingly, the Court finds that the circuit court did not violate clearly established federal law as set forth in the Due Process Clause in imposing extended-term and consecutive sentences upon Smith.

> B.  <u>Apprendi Claim</u>

> Smith argues that by imposing an extended-term sentence upon her, the circuit court violated her right to trial by jury under the Sixth Amendment as enunciated by <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000) and <u>Kaua v. Frank</u>, 436 F.3d 1057 (9th Cir. 2006).  Smith's Memorandum in Support of Amended Petition at 82-90. Smith maintains that the Court should not consider Respondents' argument that <u>Apprendi</u> cannot be applied retroactively because Respondents did not make this argument in response to her Second Rule 40 Petition filed on August 6, 2002, but instead addressed the merits of Smith's <u>Apprendi</u> claim. Id. at 88-89.

44

Respondents argue that <u>Apprendi</u> does not apply
to Smith because <u>Apprendi</u> was decided almost five-and-
one-half years after the conclusion of her direct appeal
and <u>Apprendi</u> is not retroactively applicable to cases on
collateral review.  Respondents' Second Memorandum in
Opposition at 101-02.

In <u>United States v. Sanchez-Cervantes</u>, 282 F.3d
664, 668-671 (9th Cir. 2002), the Ninth Circuit held
that <u>Apprendi</u> does not apply retroactively to cases on
initial collateral review.  <u>Apprendi</u> was decided on June
26, 2000.  In Smith's case, the Hawaii Supreme Court
affirmed her judgment of conviction by summary
disposition order on January 13, 1997.  Notice of
Judgment and Appeal was filed on January 31, 1997.
Smith did not seek a writ of certiorari with the United
States Supreme Court.  Thus, Smith's sentence and
judgment became final years before <u>Apprendi</u> was decided.
Because <u>Apprendi</u> is not applied retroactively to cases
on collateral review, Smith' <u>Apprendi</u> claim fails and

the Court need not reach the merits of Smith's claim.[7]
Accordingly, the Court finds that Smith's consecutive
life terms sentence and concurrent ten-year extended
terms sentence is not contrary to, or an unreasonable
application of, clearly established federal law.

<u>CONCLUSION</u>

Based on the foregoing, the Court FINDS and
RECOMMENDS that Smith's Petition be DENIED.

IT IS SO FOUND AND RECOMMENDED.

Dated:  Honolulu, Hawai'i, March 9, 2007.





_____
Kevin S.C. Chang

---

[7] Smith also argues that this Court is bound to
address the merits of Smith's <u>Apprendi</u> claim because
the circuit court denied Smith's Second Rule 40
Petition on the merits rather than dismissing it on
procedural grounds.  Smith's Memorandum in Support of
Amended Petition at 86.  Regardless of the reasoning
set forth by the circuit court, this Court is bound to
apply the law of the Ninth Circuit as set forth in
<u>United States v. Sanchez-Cervantes</u>, 282 F.3d at 668-71.

United States Magistrate Judge

Regina Smith v. John F. Peyton, Jr., et al., Civ. No. 04-00091
HG-KSC; Findings and Recommendation to Deny Petition for Writ of
Habeas Corpus