PETER C. WOLFF, JR.  #2332
Federal Public Defender
District of Hawaii

ALEXANDER SILVERT
First Assistant Federal Defender
300 Ala Moana Boulevard, Suite 7104
Honolulu, Hawaii  96850-5269
Telephone:  (808) 541-2521
Facsimile:   (808) 541-3545
E-Mail:      alexander_silvert@fd.org

Attorney for Petitioner
REGINA SMITH

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| REGINA SMITH, | ) | CIV. NO. 04-00091 HG/KSC |
| | ) | |
| Petitioner, | ) | PETITIONER'S OBJECTIONS TO |
| | ) | MAGISTRATE'S FINDINGS AND |
| vs. | ) | RECOMMENDATION TO DENY |
| | ) | AMENDED PETITION FOR WRIT OF |
| JOHN F. PEYTON, Director, | ) | HABEAS CORPUS; CERTIFICATE |
| Department of Public Safety, State of | ) | OF SERVICE |
| Hawaii; and MILLICENT | ) | |
| NEWTON-EMBRY, Warden, Mabel | ) | |
| Bassett Correctional Center, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

REGINA SMITH,                              )    CIV. NO. 04-00091 HG/KSC
                                           )
          Petitioner,                      )    PETITIONER'S OBJECTIONS TO
                                           )    MAGISTRATE'S FINDINGS AND
    vs.                                    )    RECOMMENDATION TO DENY
                                           )    AMENDED PETITION FOR WRIT OF
JOHN F. PEYTON, Director,                  )    HABEAS CORPUS; CERTIFICATE
Department of Public Safety, State of      )    OF SERVICE
Hawaii; and MILLICENT                      )
NEWTON-EMBRY, Warden, Mabel                )
Bassett Correctional Center,               )
                                           )
          Respondents.                     )
                                           )

**PETITIONER'S OBJECTIONS TO MAGISTRATE'S FINDINGS AND
RECOMMENDATION TO DENY AMENDED PETITION FOR
<u>WRIT OF HABEAS CORPUS</u>**

On March 9, 2007, the Findings and Recommendation To Deny Amended Petition For Writ Of Habeas Corpus was filed by Magistrate Judge Kevin Chang (hereafter "F & R"). The F & R denies each and every claim raised by Petitioner. While Petitioner objects to each and every finding and recommendation made by the Magistrate in the F & R based upon the arguments made in her amended habeas corpus petition, Petitioner submits the following specific objections herein.

## I.   DR. BIDWELL'S TESTIMONY THAT CHILDREN'S STATEMENTS WERE "CONSISTENT" WITH HIS MEDICAL FINDINGS

The thrust of Petitioner's claim regarding Dr. Bidwell's testimony is that it vouched for the credibility of the children. Petitioner maintains that it was a violation of her due process rights for Dr. Bidwell to have testified at all, because he was neither a treating physician and the children did not believe he was treating them when they made statements to him regarding their alleged sexual abuse. Petitioner's main point of contention, however, centers on his testimony that the children's statements were "consistent" with his medical examination. The F & R rules that there was no due process violation when Dr. Bidwell testified that the children's statements to him were "consistent with his medical findings." [F & R at pp. 26-29]. The F & R cites to the trial court's limiting instruction and asserts that there "were permissible inferences that the jury could make based on Dr. Bidwell's testimony that do not relate to the credibility of the children." [F & R at pp. 28-29]. Petitioner submits that neither of the F & R's reasons are legally sound, nor do they refute Petitioner's argument that Dr. Bidwell's testimony served no other purpose than to bolster the credibility of the children, and thus violated her right to a fundamentally fair trial.

First, while the limiting instruction stated that issues of credibility were up to the jury to decide, the trial court then gave the seal of approval for consideration

2

of Dr. Bidwell's testimony by stating that the jury could consider this testimony for "purposes of his diagnosis or his treatment." [F & R at p. 27-28, n. 3]. While it is debatable whether this limiting instruction may have been correct in regard to the children's statements to Dr. Bidwell as to what they claimed had physically occurred to them, it was absolutely incorrect regarding Dr. Bidwell's assertion that their statements were "consistent" with his medical examination. No state rule, federal rule, or case law permits an expert to testify in such a manner. See Webb v. Lewis, 44 F.3d 1387 (9th Cir. 1994) (physician could only testify as to the results of his examination); United States v. Ravel, 930 F.2d 721 (9th Cir. 1991) (inappropriate to have expert witness bolster the credibility of a witness). Dr. Bidwell's testimony that the children's statements were consistent with his medical examination did not repeat a statement made by the children, which may or may not have been permitted under H.R.E. § 803(b)(4), but was a direct statement as to the credibility of the children. Under any analysis, this testimony should not have been permitted and, given that the trial boiled down to a finding of credibility by the jury, the admission of this testimony violated Petitioner's right to a fundamentally fair trial.

The limiting instruction, while at first seeming to caution the jury that it alone was the arbiter of credibility, then went on to confuse the jury regarding this particular statement by Dr. Bidwell by incorrectly holding that the jury could consider it for purposes of his diagnosis. Given Dr. Bidwell's testimony was that their

statements were "consistent" with his medical examination, a statement which had

absolutely nothing to do with formulating his "diagnosis" and/or "treatment," how

was the jury supposed to consider this testimony except as improperly bolstering the

credibility of the children?  Thus, the limiting instruction not only did not cure the

error, it compounded the error.

As a second reason for denying Petitioner's claim regarding

Dr. Bidwell's testimony, the F & R states that there were other permissible inferences

the jury may have drawn from the evidence.  [F & R at p. 29].  Unfortunately for this

Court, the F & R fails to cite any proper inference Dr. Bidwell's testimony could have

had.  Nor did the State, in its response, offer any plausible alternative inference that

the jury may have drawn from Dr. Bidwell's testimony that the children's statements

were "consistent" with his medical diagnosis.[1]  Given that Dr. Bidwell's "medical

examination" found little, if any, evidence of sexual abuse, there could have been no

other "inference" which the jury could have drawn from his comment that their

---

[1] Even in <u>State v. Yamada</u>, 57 P.3d 467 (Haw. 2002), which the F & R cites to for the proposition that an expert witness may testify even if the expert conducted a physical examination solely for the purpose of diagnosis and testimony, the expert was not permitted to testify as to whether what the patient said was "consistent" with his diagnosis.  <u>See also</u> <u>State v. Batangan</u>, 799 P.2d 48 (Haw. 1990) ("where the effect of the expert's opinion is 'the same as directly opinion on the truthfulness of the complaining witness,' such testimony invades the province of the jury."

statements were "consistent" with his medical examination other than one bolstering the children's version of events.

Here, the main issue in the trial was credibility.  Both children testified. Both defendants testified.  There was little, if no, physical evidence or any other supporting evidence.  Even the state prosecutor realized that the entire prosecution came down to the question of credibility - - would the jury believe the children.  In his opening summation, the prosecutor made the following remarks:

> Ladies and gentlemen, this case boils down to credibility.  Who do you believe, Jana and Alisha or Francis and Regina?  And when you look at the facts of this case, the facts show that Jana and Alisha are telling you the truth.
>
> And ladies and gentlemen, be reasonable in what you would expect the evidence to be.  Be reasonable in what you would expect a five year old and a seven year old to come in here and tell you when they were abused before they were three and five, two years ago.
>
> And ladies and gentlemen, the only thing that you have to do to convict the defendants of every single one of these counts is to believe the children.  If you believe the Jana and Alisha, then the defendants are guilty of all of these counts.
>
> And it's a question, ladies and gentlemen, of credibility.

[Tr. 9/24/93 at p. 17].

Moreover, in his rebuttal closing argument, the prosecutor, discussing issues of credibility, specifically mentioned Dr. Bidwell's testimony, twice, as proving that what the girls had said was consistent with his medical findings. [Tr. 9/24/93 at pp. 78, 86]. The prosecutor later went on to reiterate its theme of credibility:

> Ladies and gentlemen, when you look at the evidence in this case you will see that you do not need medical evidence to find somebody guilty of sexual assault. What you will see is that the law dos not require that. The defense would like the law to require that. The defense would like you to think that that's what's necessary.
>
> But that is not what's necessary. The only thing that is necessary in this case is that you believe Jana and Alisha, that's it.

[Tr. 9/24/93 at pp. 85-86].

As cited in her amended habeas corpus petition on pp. 57-60, when a conviction is based upon a credibility finding by the jury, and when vouching or bolstering evidence has been improperly admitted, courts have found that such error fundamentally deprives a defendant of a fair trial. In <u>Snowden v. Singletary</u>, 135 F.3d 732 (11th Cir. 1998), a case so strikingly similar to Petitioner's case that it bears repeating here, the only physical evidence that the child may have been abused was that the child had been treated for an ailment that could be transmitted both sexually and by other non-sexual means. This fact is even more than the results offered up by

Dr. Bidwell.  The prosecution, in closing, noted the significance of the expert witness' testimony that, in general, 99.5% of children who report sexual abuse are telling the truth.  The expert testified that "there was no evidence [from his medical evaluation] that the girl made up the entire story."  The Eighth Circuit held that this testimony improperly vouched for the credibility of the child *and* rendered the trial fundamentally unfair.  Id. at 739.

Here, Dr. Bidwell did not make a generalized statement that children who report abuse are telling the truth, rather he made a very specific, particularized statement that what the children had told him was "consistent" with his diagnosis of abuse.  Not just one of the children, but both.  Petitioner submits that given the lack of physical evidence and corroborating evidence in this case, the issue of credibility was of tantamount importance and Dr. Bidwell's testimony rendered her trial fundamentally unfair.

## II.    SEXUALIZED BEHAVIOR

The F & R rules that Petitioner failed to prove, by clear and convincing evidence, that the testimony of Mazepa stating that she witnessed "sexualized behavior" by the children and the use of that testimony in closing argument by the prosecutor, was impermissible and rendered her trial fundamentally unfair.  [F & R at p. 36].  This ruling miscast's Petitioner's claim.  Petitioner's objection was that, *without expert testimony*, the evidence offered by Mazepa and the inference then

7

drawn and argued by the prosecutor in closing argument, that the acts witnessed by Mazepa constituted inappropriate "sexualized behavior," created fundamental error because its only purpose was to bolster the credibility of the children without a proper foundation having been laid by an expert witness. Specifically, the State argues, and the F & R rules, that Mazepa's testimony and the prosecutor's use of that testimony to argue "sexualized behavior" fell within the "common knowledge of the average layman"and was therefore permissible. [F & R at pp. 34, 39].

The F & R, ignores the cases and articles cited by Petitioner in her amended habeas corpus petition that all reflect that the testimony of an expert witness is required in order to make a nexus between various acts simply being witnessed and the classification of those acts as constituting sexualized behavior, specifically because such behavior falls outside the knowledge of the average layman.[2]  Instead

---

[2] In Petitioner's amended habeas corpus petition, at pp. 65-70, Petitioner cites a list of cases stating that *not only* must an expert testify in certain situations to provide the nexus between witnessed behavior and the classification of that behavior as demonstrating some relevant conduct, but that *absence of such expert testimony renders the admission of the evidence irrelevant in the first instance.* In Almeida v. Correa, 465 P.2d 564, 602-603 (Haw. 1970), the Hawaii Supreme Court itself stated, in the context of a paternity suit, that even the showing of the child to the jury itself would be useless in determining paternity absent the testimony of an expert.

> If only an expert can inform the jury of any resemblance
> between parent and child, it follows that the exhibition of
> a child to a jury would be useless in determining paternity.
> The only way an exhibition might possibly be justified

of addressing these authorities, the F & R cites two cases as allegedly holding that such testimony falls within the knowledge of the average layman and requires no expert testimony.  [F & R at p. 39].  In fact, both cases state exactly the opposite. First, the F & R cites to <u>United States v. Peralta</u>, 941 F.2d 1003, 1009 (9th Cir. 1991), and somehow misinterprets the entire holding.  <u>Peralta</u> involved a kidnapping.  The government wanted to put on an expert witness to explain the post-kidnapping behavior of the victim.  The defense opposed it.  After discussing cases dealing with sexual assault where the courts had found that expert testimony was necessary to explain the post-rape behavior of victims in that type of situation, the Ninth Circuit held:

> In opposing the admission of the expert's testimony Peralta's counsel argued to the district court:  'We are saying that because of her actions in this case being so unusual, they are inconsistent with, in fact, a kidnapping having occurred...' *The testimony of the expert witness was admissible to explain Maria Robleto's conduct after she was kidnapped and held hostage.*

---

> would be as an aid to he expert in pointing out the reasons for his findings or opinions.

<u>See also</u>, <u>United States v. Figueroa-Lopez</u>, 125 F.3d 1241, 1246 (9th Cir. 1997) (holding that in order for evidence to come in regarding the activities of a defendant in a parking lot being consistent with drug dealing, an experience agent, qualified as an expert, must testify.  It is not enough that a person is an eyewitness, they must be qualified to interpret the activity in a particular manner for it to be permitted into evidence).

The F & R then cites to <u>United States v. Juvenile</u>, 347 F.3d 778, 781 n.1 (9th Cir. 2003), and quotes from the footnote that "age-inappropriate sexual knowledge is a common symptom among sexually abused children...."  [F & R at p. 39].  The problem with this citation is:  (1) it is taken from the fact section of the decision and not from the legal analysis section of the decision; (2) this statement itself was taken from a scientific study conducted by experts; and (3) the statement has nothing to do with whether a layperson could understand such behavior as "sexualized" without the testimony of an expert -- such as, for example, an expert who had conducted the study cited -- to explain it.  In fact, in <u>Juvenile</u>, a case that did not actually discuss the issue at hand at all, the child was seen by an expert who related to the court the significance of the statements and acts of the child.  How, then, the F & R cites these two case for the idea that Mazepa and the prosecutor could, without an expert witness, classify the children's behavior as witnessed by Mazepa as "sexualized behavior" and argue that to the jury in closing argument is unknown.  The F & R cites to no other source for its erroneous statement that Mazepa and the prosecutor could substitute themselves as expert witnesses and testify -- the prosecutor without being subject to cross-examination -- that such behavior was "sexualized" and therefore evidence of sexual abuse.

    In fact, Petitioner has demonstrated that the testimony offered by Mazepa, and as seized upon by the prosecutor in closing argument, should not have

been permitted into evidence at all, much less then be classified as constituting "sexualized behavior" without the testimony of an expert witness. The F & R then takes this erroneous conclusion to find that since the behavior was something that could be understood by the average layman, the jury had the right to consider it and make its own "permissible inferences." [F & R at p. 40]. Therefore, according to the F & R, the trial was not fundamental unfair. In fact, the error here had tremendous impact upon the fairness of the trial. First, it must be noted that the prosecution deliberately chose not to put on the testimony of an expert. The prosecution had an expert available to testify but, because the prosecutor did not want to abide by discovery orders issued by the state court, chose not to put the expert on the witness stand. [F & R at p. 32, n. 4]. Second, absent the testimony of an expert witness, Mazepa should not have been permitted to testify to the behavior she witnesses at all, as it had no independent relevance. Third, the prosecutor, by being permitted to argue in closing that the behavior witnessed by Mazepa constituted "sexualized behavior" consistent with the children having been sexually abused, testified as a witness without having been subject to cross-examination. The prosecutor was also permitted to act as a witness and prosecutor in the same case. Fourth, the use, by the prosecutor, of this evidence in closing compounded the error created when Mazepa was permitted to testify in the first instance. The F & R appears to divorce the impact of Mazepa's testimony from the use of that testimony by the prosecutor in closing

11

argument.   In realty, the two went hand-in-hand to deprive Petitioner of a fundamentally fair trial.   Fifth, and most importantly, as argued strenuously and repeatedly by the prosecutor during closing argument, the entire case came down to the issue of credibility.   The testimony of Mazepa, as improperly characterized by the prosecution, was the most compelling evidence outside of the children's own testimony that they had been sexually abused.   Therefore, Petitioner submits that the F & R provides no basis to deny her claim regarding this issue and this Court should grant Petitioner a new trial on this basis alone.

## III.    CONSECUTIVE SENTENCES

The F & R rules that Petitioner's claim that the state trial court, when imposing five consecutive life sentences under H.R.S. § 706-606, did not follow procedures and did not properly consider required factors before imposing consecutive sentences, did not violate her due process rights.   The F & R claims that the transcript, although admittedly sparse, demonstrated that the state court considered the § 706-606 factors in imposing consecutive sentences.   [F & R at pp. 41-44].[3]   In support of its position, the F & R cites to only two portions of the sentencing hearing that it asserts the state sentencing court considered the § 706-606 factors.

---

[3] The state court imposed five consecutive life sentences for an individual with no prior adult convictions.

12

First, the F & R cites to the comment by the state court that "[a]fter applying all of the factors set forth in H.R.S. § 706-606, this court determines that the *extended term* imposed is the appropriate sentence in this case." [F & R at p. 42]. The F & R claims that this demonstrates that the state sentencing court did, in deed, consider the § 706-606 factors when imposing five *consecutive* life sentences. As noted, however, in Petitioner's amended habeas corpus petition, this one statement by the state sentencing court actually precedes a long statement by the court justifying why an *extended term* sentence was justified *under § 706-664.* Not once did the state sentencing court state it had reviewed any of the required factors under § 706-606 when imposing *consecutive* sentences. The findings and procedures under § 706-606 and § 706-664 are distinct, requiring the sentencing court to undertake *two* distinct processes at Petitioner's sentencing hearing. The record demonstrates, however, that while the state sentencing court did undertake to examine and consider the required factors under the Hawaii extended term law, it did not do so when imposing consecutive sentences. The F & R's citation to the sentencing court's remark about § 706-606 when imposing an extended term sentence, in the context of the sentencing hearing and because Hawaii law requires distinct analyzes when imposing an extended term sentence under § 706-664 as opposed to consecutive sentences under § 706-606, cannot be cited as indicating that the sentencing court had properly

13

considered these factors when imposing five consecutive life sentences under due process standards.[4]

This becomes very clear in the context in which the sentencing hearing was held, where the State did not even file a motion prior to sentencing asking that the state court impose consecutive sentences. Rather, the State filed a motion expressly asking the state court to only impose an extended term. The issue of consecutive sentences did not arise until, during defense argument at sentencing, the defense attorney simply asked that all terms be run concurrently. [Tr. 11/29/93 at pp. 23-24]. The state court never addressed this issue until, after giving its reasons why it was imposing an *extended term*, the court simply pronounced that the sentences were to run consecutively. [Tr. 11/29/93 at pp. 28-29].

The F & R also cites, in support of its conclusion that the sentencing court had satisfied due process concerns, that the state court had reviewed "the Presentence Investigation Report." [F & R at p. 43]. The record actually demonstrates that, when imposing the *extended term* sentence and justifying its basis for that type of sentence, the state court had reviewed the Presentence Investigation

---

[4] As briefed by Petitioner in her amended petition, once a State has imposed upon itself procedural rules and regulations relating to how and when it will deprive one of its citizens of their liberty, a citizen has a due process and liberty right and the State must follow its rules and regulations. See Evitts v. Lucey, 469 U.S. 387, 400-401 (1985).

Report. The sentencing court then went on to cite to specific reasons why it was imposing such a sentence, utilizing language only related to the factors related to an extended term sentence. At no time did the state sentencing court ever indicate it had reviewed anything, much less the *relevant* portions of the Presentence Investigation Report, when imposing five consecutive life sentences.[5] Petitioner, therefore, maintains that her federal due process rights were violated when the state court imposed five consecutive life terms and that the reasons cited in the F & R do not support any other conclusion.

## IV.  __APPRENDI__ CLAIM

The F & R holds that the Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466 (2000), does not apply retroactively to cases on collateral review pursuant to the Ninth Circuit's ruling in United States v. Sanchez-Cervantes, 282 F.3d 664, 668-671 (9th Cir. 2002). Accordingly, the F & R does not address the merits of

---

[5] The state Presentence Investigation Report itself does not state, for the judge, whether consecutive or concurrent sentences should be imposed. All the Report contains, besides a history of the defendant and the case, is a citation to various sentencing statutes which may apply. The Report itself does not contain an outline that considers the various factors required to be considered under § 706-606 by a court before imposing consecutive sentences. In fact, the Report did detail reasons why a sentence of incarceration, rather than probation, should be imposed. But nothing more. Thus, the F & R cannot even cite to the Presentence Investigation Report itself as having laid out the relevant reasons why the sentencing court should have imposed consecutive sentences. That was up to the sentencing court to analyze and express. It did not.

Petitioner's <u>Apprendi</u> argument.  [F & R at pp. 44-46].  Petitioner, as stated in her amended habeas corpus petition, does not dispute this case law.  The F & R, however, completely ignores and fails to address Petitioner's claim that the State waived the argument that <u>Apprendi</u> does not apply retroactively *in this proceeding* by having voluntarily chosen to address Petitioner's claim on the merits in the state court proceedings below and having voluntarily chosen not to raise the <u>Apprendi</u> retroactivity issue at all as a defense to the claim.  Second, because the State took this position in the state proceedings below, the highest State court which addressed this claim also did not base its ruling on whether or not the <u>Apprendi</u> decision was retroactive, but rather reached the merits of Petitioner's claim.  Accordingly, under well-established federal habeas corpus law, cited in detail in Petitioner's amended habeas corpus petition at pp. 85-90, a federal court may not "avoid granting [a] writ pursuant to 28 U.S.C. § 2254(d)(1) by positing an alternative reason for the state court's denial of [a petitioner's federal claim] that is entirely distinct from the reason given by the state court, even if [that] different reason might have justified the state court's action."  <u>Van Lynn v. Farmon</u>, 347 F.3d 735, 741 (9th Cir. 2003).  The F & R completely and utterly fails to address either Petitioner's waiver argument or Petitioner's position that this Court may not now, given the tactical decision made below by the State to address Petitioner's <u>Apprendi</u> argument on the merits, deny her

16

*Apprendi* claim on the basis that *Apprendi* is not to be applied retroactively, *in general*. See also Kaua v. Frank, 436 F.3d 1057, 1061 (9th Cir. 2006).[6]

Accordingly, based upon the Ninth Circuit's holding in Kaua, that the State of Hawaii's extended-term procedure violates the dictates of Apprendi, this Court must address Petitioner's Apprendi claim on the merits and vacate her sentence.

DATED:  Honolulu, Hawaii, March 30, 2007.


 /s/ Alexander Silvert
ALEXANDER SILVERT
Attorney for Petitioner
REGINA SMITH

---

[6] The State, in its Opposition Brief on p. 102, cites several cases which it argues permits this Court to "affirm on any ground supported by the record, even if it differs from the rationale of the [Hawaii Supreme Court]."  First, Petitioner notes that the cases cited to by the State do not hold what the State represents.  That is because the State, in changing the words contained in the brackets, materially alters the holding of those cases.  The appellate cases specifically use the words "district court."  The difference is telling, as the *appellate court* is actually holding in the context of those cases that *it* can base its decision on a rationale not stated by the *district court* in the context of *a direct review, not in a habeas corpus proceeding*. The decisions in Van Lynn and Kaua make this proposition crystal clear -- that a federal district court cannot, in the context of a § 2254(d)(1) claim, base its holding on a grounds not found by the state court.  The State does not even attempt to distinguish the Van Lynn and Kaua decisions, nor could it.  The F & R, nevertheless, completely fails to address this issue, nor does it cite to the cases mentioned by the State to support its failure to address this issue.

17