IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

REGINA SMITH,                        )    CIVIL NO. 04-00091 HG-KSC
                                     )
            Petitioner,              )
                                     )
        vs.                          )
                                     )
JOHN F. PEYTON, JR., Director,       )
Department of Public Safety,         )
State of Hawai'i, and MILLICENT      )
NEWTON-EMBRY, Warden, Mabel          )
Bassett Correctional Center,         )
                                     )
            Respondents.             )
_____    )


**ORDER ADOPTING AND SUPPLEMENTING MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION TO DENY AMENDED PETITION FOR WRIT OF HABEAS CORPUS**


Petitioner Regina Smith ("Smith") has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 stating six grounds for relief.  On June 9, 2006 this Court issued an "Order Adopting in Part Magistrate Judge's Findings Regarding Petition for Writ of Habeas Corpus".  The Court's order addressed on the procedural aspects of Smith's claims and held that Smith had voluntarily withdrawn Grounds Three and Four, but that Smith could proceed on Grounds One, Two, Five, and Six.  Smith's amended petition contains only Grounds One, Two, Five, and Six.

Because the Court's previous order only addressed procedural issues, the Court directed the parties to resubmit briefs on the merits of Grounds One, Two, Five, and Six.  After briefing by the

1

parties, the Magistrate Judge entered a "Findings and Recommendation to Deny Amended Petition for Writ of Habeas Corpus", dated March 9, 2007.

For the reasons set forth below, the Court **ADOPTS** the Magistrate Judge's Findings and Recommendation, supplementing it as set forth below, and **DENIES** Smith's amended Petition.

### PROCEDURAL HISTORY

On September 29, 1993, a jury found Smith guilty of the sexual assault of her minor daughters, Alisha and Jana, between January 1, 1990, and July 20, 1991.  Smith was convicted of five counts of sexual assault in the first degree, in violation of Hawaii Revised Statutes ("Haw. Rev. Stat.") § 707-730(1)(b), and five counts of sexual assault in the third degree, in violation of Haw. Rev. Stat. § 707-732(1)(b).

On November 29, 1993, the Circuit Court of the First Circuit ("circuit court") granted the State's motion to impose an extended term of imprisonment on Smith, pursuant to Haw. Rev. Stat. § 706-662(4)(a) and (b).  The circuit court found that Smith was a "multiple offender" because she had been convicted of five class A and five class C felonies.  The court further found that an extended term of imprisonment was necessary for the protection of the public.

The trial judge considered all of the factors required by

H.R.S. § 706-606.  The trial judge enumerated several factors for her decision, specifically, Smith's: (1) "poor prognosis for positive behavioral changes;" (2) "utter lack of victim empathy" which posed "a danger to the community;" and (3) "extensive history and admission of substance abuse."  (Resp. Ex. M at 28.) The trial judge also noted the "trauma and the emotional and irreparable injury" to Smith's children, and her abuse of her trust to them.  (Id.)  She then sentenced Smith to life with the possibility of parole for each of the first degree sexual assault charges, to be served consecutively, and ten years for each of the third degree sexual assault charges, to be served concurrently with all other sentences.

Smith appealed, and on January 13, 1997, the Supreme Court of the State of Hawaii affirmed the judgment of conviction by summary disposition order.  Smith filed a motion for reconsideration on January 27, 1997, which was denied.  Notice of Judgment and Appeal was filed on January 31, 1997.  Smith did not seek a writ of certiorari with the United States Supreme Court.

On May 6, 1997, Smith filed a Hawaii Rules of Penal Procedure ("H.R.P.P.") Rule 35 motion for correction or reduction of sentence in the circuit court.  Smith's Rule 35 motion was denied on April 13, 1998.  She did not appeal this decision.

On January 30, 1998, Smith filed her first federal petition for writ of habeas corpus, before a decision in her H.R.P.P. Rule

35 motion was issued.  See Smith v. Kaneshiro, Civ. No. 98-00092.
This petition was dismissed without prejudice as unexhausted on
January 3, 2001.

On April 1, 1998, while both her Rule 35 motion and her
federal habeas petition were still pending in their respective
courts, Smith filed her first H.R.P.P. Rule 40 petition ("First
Rule 40 Petition") for post-conviction relief.  This petition was
ultimately dismissed by the Hawaii Supreme Court on procedural
grounds, on April 24, 2002.

Smith filed a second Rule 40 Petition on July 3, 2002.  The
circuit court denied the petition on March 20, 2003.  Smith
appealed, and the Hawaii Supreme Court affirmed the circuit court
on February 2, 2004.

On February 6, 2004, Smith filed a petition for writ of
habeas corpus under 28 U.S.C. § 2254 in this Court ("Petition").

On June 1, 2004, the State of Hawaii filed its Answer to the
Petition.

On May 12, 2005, a United States Magistrate Judge issued a
Findings and Recommendation to Dismiss Petition for Writ of
Habeas Corpus ("F&R").

On August 30, 2005, after an extension of time, Smith filed
"Petitioner's Response to Magistrate's Findings and Recommendation
to Dismiss Petition for Writ of Habeas Corpus filed on May 12,
2005" ("Objection").

On April 6, 2006, having reviewed and considered the F&R and Objection, the Court entered a Minute Order directing Petitioner to identify the exact place in which she raised Grounds Three and Four in her opening brief to the Hawaii Supreme Court and to brief the issue of whether Grounds Three and Four are procedurally barred.

On April 21, 2006, Smith filed "Petitioner's Response to Court's Minute Order Issued on April 6, 2006".  Smith responded to the April 6, 2006 Minute Order by acknowledging that Grounds Three and Four were not in fact raised in her opening brief to the Hawaii Supreme Court as previously represented and by withdrawing Grounds Three and Four of her Petition.

On June 9, 2006, the Court issued an "Order Adopting in Part Magistrate Judge's Findings Regarding Petition for Writ of Habeas Corpus".  The Court held that Smith had voluntarily withdrawn Grounds Three and Four, but that Smith could proceed on Grounds One, Two, Five, and Six.  The Court's June 9, 2006 Order details the procedural history regarding the state court proceedings.

The Court directed the parties to resubmit briefs on the merits of Grounds One, Two, Five, and Six.

After briefing by the parties, on March 9, 2007, the Magistrate Judge entered a "Findings and Recommendation to Deny Amended Petition for Writ of Habeas Corpus" (F&R.)

On March 30, 2007, Petitioner filed Objections to

Magistrate's Findings and Recommendation to Deny Amended Petition
for Writ of Habeas Corpus.  Respondents did not respond to
Petitioner's objections.

## STANDARD OF REVIEW

A district judge may designate a magistrate judge to conduct
hearings, including evidentiary hearings, and to submit to the
district judge proposed findings of fact and recommendations for
the disposition, by the district judge, of a motion for judgment
on the pleadings as well as a motion for summary judgment.
28 U.S.C. § 636 (b)(1)(B).

This Court must review de novo those portions of the
magistrate judge's Findings and Recommendation ("F&R") to which a
party objects.  Fed. R. Civ. P. 72(b).  The Court may accept,
reject, or modify the recommended decision, receive further
evidence, or recommit the matter to the magistrate judge with
instructions.  Id.; see also Rule 74.2 of the Local Rules of the
United States District Court for the District of Hawaii.  This
Court may accept those portions of the F&R that are not objected
to if it is satisfied that there is no clear error on the face of
the record.  See Stow v. Murashige, 288 F. Supp. 2d 1122, 1127
(D. Haw. 2003) (citing Abordo v. State of Hawaii, 902 F. Supp.
1220 (D. Haw. 1995); Campbell v. United States Dist. Court, 501
F.2d 196, 206 (9th Cir. 1974)).

**LEGAL STANDARD**

I.   **Section 2254**

Pursuant to 28 U.S.C. § 2254(d), as amended by the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

a person in custody pursuant to a state court conviction is not

entitled to federal habeas corpus relief unless he can show that

the state court's adjudication of a claim:

> (1)  resulted in a decision that was contrary to, or involved
>       an unreasonable application of, clearly established
>       Federal law, as determined by the Supreme Court of the
>       United States; or
>
> (2)  resulted in a decision that was based on an unreasonable
>       determination of the facts in light of the evidence
>       presented in the State court proceeding.

28 U.S.C. § 2254(d).

A.   *"Contrary To" Clearly Established Federal Law*

The United States Supreme Court has interpreted the phrase

"clearly established Federal law" to mean "the holdings, as

opposed to the dicta of the Court's decisions as of the time of

the relevant state-court decision." Williams v. Taylor, 529 U.S.

362, 412 (2000).  A state court's decision is "contrary to"

clearly established law pursuant to 28 U.S.C. § 2254(d)(1) if it

"applies a rule that contradicts the governing law" set forth in

United States Supreme Court cases, or if it "confronts a set of

facts that are materially indistinguishable from a decision of

[the United States Supreme Court] and nevertheless arrives at a

7

result different from [that] precedent." <u>Id.</u> at 405-06.

  **B.** ***"Unreasonable Application" of Clearly Established Federal Law***

  A state court's decision is an "unreasonable application" of clearly established federal law pursuant to 28 U.S.C. § 2254(d)(1) if "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> at 413.  To be an "unreasonable application" pursuant to 28 U.S.C. § 2254(d)(1), the state court decision must be more than just incorrect or erroneous.  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003).  The state court's application of federal law must be "objectively unreasonable." <u>Id.</u>; <u>see</u> <u>Williams</u>, 529 U.S. at 409.  Even if the federal court might agree with a petitioner on the merits of a claim, where it is "at least reasonable" for the state court to have concluded otherwise, relief is foreclosed by the AEDPA. <u>Early v. Packer</u>, 537 U.S. 3, 11 (2002) (per curium).

**<u>ANALYSIS</u>**

**I.** **<u>The Petition</u>**

  Smith, a state prisoner, pursuant to the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254 ("AEDPA"), requests relief from her consecutive life sentences and concurrent ten-year extended-term sentence.  After the Court's June 9, 2006 Order, Smith's amended Petition contains the following grounds:

8

Grounds One, Two, Five, and Six.  In those grounds, Smith alleges:

- Ground One:  the State's medical expert, Dr. Robert Bidwell, testified that the victims (Smith's daughters, Alisa and Jana) had identified Smith and co-defendant Nakamura as their abusers in violation of Smith's Fifth, Sixth, and Fourteenth Amendment rights to confrontation and due process under the United States Constitution;

- Ground Two:  the trial court violated clearly established federal law (due process) by permitting the victims' foster mother (Ms. Denise Mazepa) to testify about the children's sexual "acting out" behavior and by permitting the prosecutor to argue, during closing rebuttal argument, that such acts constituted evidence of sexual abuse without any expert testimony characterizing the behavior as such;

- Ground Five:  the trial court imposed an extended-term sentence without considering statutorily required factors and on insufficient evidence in violation of Smith's due process rights; and

- Ground Six:  the sentencing judge violated Smith's due process rights and, in particular, Apprendi v. New Jersey, 530 U.S. 466 (2000), by imposing Smith's

extended-term sentence based upon the judge's own

factual finding based upon statutorily imposed factors,

rather than on facts found by the jury.[1]

## II.  **Relevant Background Facts and Magistrate Judge's F&R**

The F&R addresses, at length, the four grounds for relief

asserted in Smith's Petition.

> ***Ground One*** *- Admission of Dr. Bidwell's Testimony Was Not Contrary to, or an Unreasonable Application of, Clearly Established Federal Law, As Determined by the United States Supreme Court*

At trial, Dr. Robert Bidwell, the State's medical expert,

testified as to the children's medical history taken for the

purposes of medical diagnosis or treatment. The trial court

admitted Dr. Bidwell's testimony over Smith and her co-

defendant's objections, on the grounds that such testimony was

properly admitted under H.R.E. 803(b)(4), but issued the

following cautionary instruction to the jurors:

> I wish to issue this cautionary instruction to the jury in light of my overruling the defense objection to preclude the subsequent testimony on what the independent medical findings might have been with respect to the patient in question.  So as not to confuse you, you are prohibited from

---

[1]  As this Court noted in its June 9, 2006 Order Adopting in Part Magistrate's Judge's Findings Regarding Petition for Writ of Habeas Corpus, Smith's claims in Grounds Five and Six are somewhat contradictory.  In Ground Five, Smith claims that the trial judge illegally sentenced her to an extended term sentence without considering "statutorily required factors."  In Ground Six, however, Smith states that the trial judge enhanced her sentence after the judge, rather than the jury, made a factual finding based upon statutorily imposed factors.

> considering any so-called expert medical opinion on
> the believability [sic] or credibility of the
> patient, in this case Alisha and subsequently
> perhaps Jana.
>
> However, I am allowing the question under what we
> call the 803(b)(4) exception to the hearsay rule
> which specifically permits the witness to testify
> to what statements were made for purposes of his
> diagnosis or his treatment of the patient in
> question. So that's specifically for purposes of
> medical diagnosis or treatment. Thank you members
> of the jury.

(Id. at 94-95.)


With regard to Alisha, Dr. Bidwell testified, among other

things:

> Alisha told us that [Nakamura] got into bed with
> her and her sister and that he touched their, what
> they called cho-cho, which is their vagina or
> genital area. And that he also put his finger into
> their cho-cho. And that she was also made to lick
> her mother's cho-cho or vagina, the vaginal area.

(Trial Transcript, dated Sept. 21, 1993, at 96.)

Dr. Bidwell further testified that Alisha's labia and

labiamanora were normal, but that at the front part of Alisha's

hymenal ring, he found "an area of abnormal tissue" which he

described as "probably scar tissue or a scar." (Id. at 101-103.)

Dr. Bidwell opined that the injury would have caused pain and

that the scar: (1) was consistent with the medical history

related by Alisha; (2) was consistent, to a reasonable degree of

medical certainty, with a penis entering her vagina; and (3) not

consistent with childhood masturbation. (Id. at 105-06, 108-

110.)

With regard to Jana, Dr. Bidwell testified, among other

things, that Jana had told him that:

> [Nakamura] got into bed with her and touched her
> cho-cho, put his fingers into her cho-cho.   That
> she was made by her mother to lick her mother's
> cho-cho.
>
> And in addition to that she had said that
> [Nakamura] had put his -- I'm sorry, using [her]
> terminology, his ding-dong into her cho-cho, cho-
> cho meaning vagina, ding-dong meaning penis. And
> also that he had made her put her mouth on his
> ding-ding.

(Id. at 111.)

Dr. Bidwell further testified that Jana's medical history

was consistent with his physical findings, explaining:

> [t]hat given -- given the findings of a normal
> examination and that she had redundant tissue there
> and no signs of scar[r]ing, it's probably unlikely
> that an entire penis went through the vaginal
> opening.   It's hard to say because the hymen is
> very elastic tissue and it can widen up to
> accommodate fairly large objects.
>
> But I think that definitely if the penis were
> against the hymen[,] the penis, because it's a
> rounded object, the head could extend into the
> vagina behind the hymen because it's not like a
> taut membrane, it's fairly loose. And so I expect
> certainly there could be partial penetration of the
> vagina by the penis.

(Id. at 115.)

In her amended Petition, Smith argued that the trial court's

admission of Dr. Bidwell's testimony recounting Alisha and Jana's

out-of-court statements violated her Fifth, Sixth, and Fourteenth Amendment rights to confrontation and due process.  The trial court found that Dr. Bidwell examined Alisha and Jana in order to diagnose them as part of his work at the Sex Abuse Treatment Center and in anticipation of litigation and admitted his statements pursuant to Hawaii Rule of Evidence 804(b)(4) which creates an exception to the hearsay rule for statements made for the purpose of medical diagnosis.

The Magistrate Judge found that Smith did not offer clear and convincing evidence to rebut the trial court's finding that Dr. Bidwell's testimony was admissible.  The Magistrate Judge further found that there was no Confrontation Clause violation because Alisha and Jana, as declarants, were both available for cross-examination at trial.  The Magistrate Judge found that the admission of Dr. Bidwell's testimony, indicating that (1) the results of his examination were consistent with what the children had said; and (2) that the children had specifically informed him that Smith was the culprit, did not render the trial or verdict fundamentally unfair.

> ***<u>Ground Two</u> - Admission of Denise Mazepa's Testimony as to Her Observations of the Children's "Acting Out" Behavior and the Prosecutor's Reference to the Observed Behavior in Rebuttal Argument Was Not Contrary to, or an Unreasonable Application of, Clearly Established Federal Law as Determined by the United States Supreme Court***

At trial, Denise Mazepa, the girl's foster mother, testified

that she noticed Jana rubbing her vagina with a bar of soap for an excessive period of time while she was giving the girls a bath. (Trial Transcript, dated Sept. 17, 1993, at 51-52.) Mazepa contacted Child Protective Services and the Sex Abuse Treatment Center and the girls went for a medical exam at Kapiolani Medical Center for Woman and Children. (_Id_. at 62-64.)

Mazepa also testified as to various behaviors she observed such as instances in which Jana was observed touching Alisha's vagina; Jana sitting on the arm of a recliner, gyrating repeatedly; Jana putting a McDonald's "Happy Meals" figure into her vagina; and Jana foundling herself while watching television. (Trial Transcript, dated Sept. 17, 1993, at 69-71.) Mazepa also noted that the girls were fearful when they went to bed, overly concerned with making sure the doors and windows were locked, suffered "lots of nightmares", and that Jana began wetting her bed after sharing her experiences at the Child Abuse Center. (_Id_. at 76-78.)

Smith and her co-defendant moved to strike the portion of Mazepa's testimony dealing with the alleged "acting out behavior of the children". (_Id_. at 97.) They argued that the testimony was irrelevant and more prejudicial than probative. The trial court denied the motion to strike, stating that the evidence was relevant, that the jury could attach whatever weight it felt appropriate to the evidence, and that under H.R.E. 701, Mazepa,

14

as a lay witness, is entitled to offer her testimony if it is based on first hand knowledge and is relevant.  (Id. at 102-03.) The trial court also denied Smith and her co-defendant's motion for a mistrial on similar grounds.

The prosecutor referred to the behavior observed by Mazepa in his rebuttal during closing argument.  In particular, over co-defendant Nakamura's objection, the prosecutor argued that the jurors should use their common sense to determine whether Mazepa's testimony of the girl's preoccupation with safety, sexualized behavior, and Jana's bedwetting was consistent with the defense theory that Alisha and Jana had been programmed into making up allegations of sexual abuse.  (Trial Transcript, dated Sept. 24, 1993, at 71-72, 77.)

In her amended Petition, Smith argued that the trial court erred by admitting Mazepa's testimony regarding her observations of Alisha and Jana's "acting out" behavior because the testimony was more prejudicial than probative and the prosecution failed to offer expert testimony to explain the significance of the behavior witnessed by Mazepa.

The Magistrate Judge reviewed the trial court's reasons for admitting Mazepa's testimony, found that the jury could make permissible inferences based on Mazepa's testimony, and held that the admission of Mazepa's testimony was not an unreasonable application of clearly established federal law.

15

Smith also argued that the prosecutor's statements during rebuttal, that Alisha's and Jana's "acting out" behavior was "sexualized behavior" consistent with sexual abuse, resulted in an unfair trial.  The Magistrate Judge concluded that the prosecutor's statements did not deprive Smith of a fair trial.

### *Ground Five - Smith's Sentence Was Not Contrary to, or an Unreasonable Application of, Clearly Established Federal Law as Established by the United States Supreme Court*

On November 23, 1993, the State filed a motion for extended term of imprisonment alleging that: (1) Petitioner was a multiple offender within the meaning of H.R.S. § 706-662(4)(a) and (b). and that her commitment for an extended period of time was necessary for protection of the public.  The trial court granted the State's motion for an extended term sentence, finding that "by virtue of the conviction of five counts of Class A felonies, the Sexual Assault [in the] First Degree, as well as the five counts of Sexual Assault in the Third Degree, that this would qualify for the first prong, and that she would be considered or deemed a multiple offender." (Transcript, dated Nov. 29, 1993, at 27-28.)  In orally granting the State's motion, the Court further found that Smith posed a significant danger to the community "by virtue of the facts entered into by this jury to support their guilty verdicts." (Id.)  The key factors considered by the court were the "nature of the offenses and the harm, the irreparable harm done to the victims and the danger

16

[Petitioner] pose[s] to the community." (_Id_. at 28-30.)  The trial court orally sentenced Smith to five consecutive life terms in Counts 1, 2, 3, 13, and 14 and five extended ten-year terms of imprisonment in Counts 4, 5, 15, 16, and 17 to run concurrently. (_Id_. at 28-29.)  The court subsequently issued a written order granting the State's motion for an extended term sentence.

In her amended Petition, Smith argued that: (1) the trial court failed to adhere to state procedures and statutes in violation of her due process rights; and (2) the trial court's imposition of an extended-term sentence violated her right to trial by jury under the Sixth Amendment of the United States Constitution as enunciated in _Apprendi v. New Jersey_, 530 U.S. 466 (2000).  The Magistrate Judge found that the trial court did not violate Smith's due process rights because it reviewed the pre-sentence report and considered many of the factors set forth in H.R.S. § 706-606 as required by H.R.S. § 706-668.5 in imposing Smith's extended-term and consecutive sentences.  The Magistrate Judge also found that Smith's _Apprendi_ claim fails because _Apprendi_ does not apply retroactively to cases on collateral review.

### _Ground Six - The Trial Court Did Not Violate Smith's Sixth Amendment Right to Trial By Jury Enunciated in Apprendi_

In Ground Six of her Petition, Smith claims that her rights to trial by jury and due process were violated when the sentencing judge imposed extended term sentences on the basis of

17

a factual finding statutorily committed to, and in fact made by, the sentencing judge rather than the jury.  This claim is based on an alleged <u>Apprendi</u> violation.  The United States Supreme Court decided <u>Apprendi</u> almost five-and-one half years after the conclusion of Smith's direct appeal.  The Magistrate Judge found that because <u>Apprendi</u> does not apply retroactively to cases on collateral review, Smith's <u>Apprendi</u> claim fails.

## III. <u>Smith's Objections</u>

Smith makes a general objection to all findings in the F&R. Smith also makes specific objections which the Court addresses below.

### *Ground One - Dr. Bidwell's Testimony*

Smith contends that the Magistrate Judge erred in finding that there was no due process violation when Dr. Bidwell testified that the children's statements to him were "consistent with his medical findings." (F&R at 26-29.)  In particular, Smith contends that it was impermissible for Dr. Bidwell to testify that the children's statements were consistent with his medical examination.  (Obj. at 3.)  Smith contends that such testimony constituted a direct statement as to the credibility of the children as opposed to a repetition of statements made by the children admissible under H.R.E. 803(b)(4).  Smith argues that the limiting instruction only served to confuse the jury by instructing the jury that it could consider Dr. Bidwell's

testimony that the children's statements were consistent with his medical examination for purposes of diagnosis or treatment when such a statement had nothing to do with diagnosis or treatment. (<u>Id</u>. at 3-4.)

Smith also contends that the Magistrate Judge erred in finding that there "were permissible inferences the jury could make based on Dr. Bidwell's testimony that do not relate to the credibility of the children."  (F&R at 28-29.)  Smith contends that there are no permissible inferences the jury could have drawn from Dr. Bidwell's testimony that the children's statements were consistent with his medical diagnosis and that Dr. Bidwell's testimony only went to improperly bolstering the children's credibility.

A *de novo* review of the record shows, as the Magistrate Judge concluded, that Smith is not entitled to habeas relief as to Ground One of her Petition.  The Magistrate Judge properly reviewed the trial court's factual determination that the children's statements to Dr. Bidwell were made for the purposes of medical diagnosis or treatment under the "clear and convincing evidence" standard.  28 U.S.C. § 2254(e)(1).  The Magistrate Judge also properly deferred to the state court's interpretation of its own law.  <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus.")  (citations omitted).  The

19

state court found that the children's statements to Dr. Bidwell were admissible under H.R.E. 803(b)(4) as statements made for the purposes of diagnosis or treatment.  The state court's determination is supported by the record.  At trial, Dr. Bidwell testified that he performed medical examinations on Alisha and Jana and that he confirmed their medical history with them. (Trial Transcript, dated Sept. 21, 1993, at 85, 100, 110, 111, 153, and 160.)  Dr. Bidwell testified that he examined the girls for injuries, tested them for sexually transmitted diseases, and relied on both the physical examination and medical history for diagnostic purposes and treatment decisions.  (Id. at 86, 101-02, 134-35, 148-51, 160.)

The trial court also properly admitted Dr. Bidwell's testimony that the children identified Smith and co-defendant Nakamura as perpetrators of the sexual abuse.  Statements identifying sexual abusers are admissible under H.R.E. 803(b)(4) as statements reasonable pertinent to diagnosis or treatment. See, e.g., United States v. George, 960 F.2d 97, 99 (9th Cir. 1992) ("Sexual abuse involves more than physical injury; the physician must be attentive to treating the victim's emotional and psychological injuries, the exact nature and extent of which often depend on the identity of the abuser"); People of Territory of Guam v. Ignacio, 10 F.3d 608, 613 (9th Cir. 1993) ("child victim's statements about the identity of the perpetrator are

admissible under the medical treatment exception when they are made for the purposes of medical diagnosis and treatment."). In this case, the identity of the children's abuser was relevant to their treatment. Had Smith, for instance, regained custody of the children it would have interfered with the children's treatment given that they had identified Smith as an abuser.

As to Smith's specific objection regarding Dr. Bidwell's testimony that the children's statements were consistent with his diagnosis, such testimony does not amount to improper evidence of bolstering so as to render the trial fundamentally unfair. The case of Snowden v. Singletary, 135 F.3d 732 (11th Cir. 1998), cited by Smith in her objections for the proposition that expert testimony vouching for the credibility of a child victim renders a trial fundamentally unfair, is both non-binding precedent and distinguishable from the facts of this case. In Snowden the Eleventh Circuit Court of Appeals held that the expert vouched "forcefully for the children's credibility" by testifying that "99.5% of children tell the truth" and that, in his own experience with children as an expert, he had "not personally encountered an instance where a child had invented a lie about abuse." Id. at 738. In contrast, Dr. Bidwell's testimony that the children's statements were consistent with his diagnosis is simply a means of synthesizing the statements made by the children to him for purposes of diagnosis or treatment (which, as

discussed above, are admissible) with his expert opinion as to
the children's diagnosis (which is also admissible evidence).

Dr. Bidwell's opinion that the children's statements to him
were consistent with his own diagnosis is not improper vouching.
See Punches v. State, 944 P.2d 1131, 1136 (Wyo. 1997)
("Testifying that the injuries were consistent with sexual abuse
is not directly expressing an opinion that there was sexual
abuse, that the victim is telling the truth, or that the
defendant was guilty of sexual abuse.").  Further, Hawaii Rule of
Evidence 704 permits "[t]estimony in the form of opinion or
inference" even though "it embraces an ultimate issue to be
decided by the trier of fact."  Dr. Bidwell's testimony is
otherwise admissible expert testimony and falls within H.R.E.
704.

Even if Dr. Bidwell's testimony was viewed as lending
credibility to the children's statements, in the context of child
abuse, such testimony is not necessarily inadmissible.  In State
v. Batangan, 799 P.2d 48 (Haw. 1990), the Hawaii Supreme Court
recognized that, although expert testimony on a witness'
credibility is generally inappropriate "sexual abuse of children
is a particularly mysterious phenomenon, . . . and the common
experience of the jury may represent a less than adequate
foundation for assessing the credibility of a young child who
complains of sexual abuse."  Id. at 51 (citations and quotations

22

omitted).  The <u>Batangan</u> court went on to recognize that the fact
that testimony in a child abuse case carries the potential of
bolstering the credibility of one of the witnesses does not alone
render it inadmissible.  <u>Id</u>. at 52.  "The pertinent consideration
is whether the expert testimony will assist the jury without
unduly prejudicing the defendant."  <u>Id</u>.  While the <u>Bantagan</u> court
ultimately found the testimony at issue in that case to be
inadmissible (consisting of a clinical psychologist directly
opining on the truthfulness of the victim's testimony), its
general statement of the considerations pertinent to the
admissibility of certain testimony in child abuse cases guides
the Court in analyzing the present case.

In this case, Dr. Bidwell's testimony assisted the jury in
making a connection between his diagnosis and the children's
statements.  Dr. Bidwell did not directly opine on the children's
truthfulness.  <u>See</u> <u>Batangan</u>, 799 P.2d at 52 ("where the effect of
the expert's opinion is the same as directly opining on the
truthfulness of the complaining witness, such testimony invades
the province of the jury.") (citations and quotations omitted).
Smith has failed to show that Dr. Bidwell's testimony was unduly
prejudicial to her or that it deprived her of a fair trial.  As
the Magistrate Judge noted there was no violation of the
Confrontation Clause of the Sixth Amendment of the United States
Constitution because both children also testified at trial about

the specific acts of abuse reported to Dr. Bidwell and were subject to cross-examination by Smith and her co-defendant Nakamura.  See, e.g., Crawford v. Washington, 541 U.S. 36, 59 n.9 (2004) ("[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements . . . The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it.") (citations omitted). The jury was able to properly perform its function of weighing the evidence and determining the credibility of the witnesses. This is particularly true in light of the trial court's limiting instruction, instructing the jury that it was not permitted to consider expert medical opinion as to the child victim's credibility.

Even if we were to find the trial court's evidentiary ruling erroneous, "failure to comply with the state's rules of evidence is neither necessary nor a sufficient basis for granting habeas relief." Jammal v. Van De Kamp, 926 F.2d 918, 919 (9th Cir. 1991).  For a petitioner to be entitled to habeas relief, there must be no permissible inferences that can be drawn from the admission of the evidence and the evidence must be of such a quality that it prevents a fair trial.  Id. at 920.  Put another way, "a federal court cannot disturb on due process grounds a state court decision to admit . . . evidence unless the admission

24

of the evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair." Walters v. Maass, 45 F.3d 1355, 1357-58 (9th Cir. 1995).

Smith has not shown that the trial court violated clearly established federal law in admitting Dr. Bidwell's testimony recounting Alisha and Jana's out-of-court statements under H.R.E. 803(b)(4).  In fact, other than the Confrontation Clause of the Sixth Amendment, Smith has not even identified the federal law which she contends the trial court's evidentiary ruling contravenes.  See Estelle v. McGuire, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to decided whether a conviction violated the Constitution, laws, or treaties of the United States").  Nor has Smith shown that the admission of Dr. Bidwell's testimony denied her a fundamentally fair trial guaranteed by due process.

Smith does not otherwise specifically object to the F&R regarding Dr. Bidwell's testimony as set forth in Ground One of her Petition.  The Court has reviewed the F&R as to Ground One in its entirety and adopts it as to Ground One.

### *Ground Two* - *Ms. Mazepa's Testimony and Prosecutor's Reference to Ms. Mazepa's Testimony in Rebuttal Closing Argument*

### 1.   Trial court's ruling admitting Mazepa's testimony as to the children's "acting out" behavior did not render the trial fundamentally unfair

Smith objects to the F&R's finding that the Smith failed to

25

prove, by clear and convincing evidence, that the testimony of Denise Mazepa, regarding her observations of the children's acting out behavior, and the use of that testimony by the prosecutor at closing, was impermissible and rendered her trial fundamentally unfair.  (Obj. at 7.)  Smith claims that Mazepa's testimony was inadmissible absent expert testimony to link Mazepa's observations regarding the children's "acting out" behavior with sexual abuse. (Id. at 8 ("the testimony of an expert witness is required in order to make a nexus between various acts simply being witnessed and the classification of those acts as constituting sexualized behavior, specifically because such behavior falls outside the knowledge of the average layman".).)

The F&R addresses at length Smith's claim that Mazepa's testimony should not have been admitted because the prosecution failed to offer expert testimony to explain the significance of the behavior witnessed by Mazepa.  As noted in the F&R, the state trial court rejected the same objections that Smith now makes in her amended Petition.  (F&R at 36.)  A trial court is given broad discretion in weighing the prejudicial versus the probative effect of certain evidence.  See Ortiz-Sandoval v. Gomez, 81 F.3d 891, 898 (9th Cir. 1996).  The trial court is entitled to even greater deference on habeas review.  Id.  Indeed, in a habeas proceeding, the Court affords the state trial court's conclusions

a presumption of correctness.  Id.  As stated above, "[a] state court's . . . evidentiary ruling is not subject to federal habeas review unless the ruling violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process."  Walters, 45 F.3d 1357-1358 (citations omitted).

The trial judge articulated several reasons in support of the admission of Mazepa's testimony.  The trial court found that Mazepa's testimony was relevant and that it was within the province of the jury to evaluate Mazepa's observations of the children's behavior and to decide whether Alisha and Jana's behavior was normal or not.  (Trial Transcript, dated Sept. 21, 1993 at 92-93; F&R at 36.)  The trial court twice considered Smith's and her co-defendant's objections to the admission of this evidence and found Mazepa's testimony to be relevant and admissible.  Mazepa's testimony regarding her observations of the children's "acting out" behavior was relevant to rebut the inference, created by defense counsel's questioning, that the children had fabricated their sexual abuse allegations so that they could remain with Mazepa.  Defense counsel's questioning suggested that the children's allegations of child abuse were a product of their desire to live with Mazepa.  Mazepa's testimony regarding her observations of the children's behavior

corroborated the children's own testimony and helped rebut
defense counsel's attack on the children's credibility.

Mazepa's observations were also relevant to explain what
prompted her to contact Child Protective Services and Sex Abuse
Treatment Center in the first place.  From Mazepa's testimony
regarding her observations as to the children's "acting out"
behavior, the jury could permissibly infer that something
terrible of a sexual nature had happened to the children.

A *de novo* review of the records shows that the Magistrate
Judge correctly deferred to the trial court's reasoning and found
that Mazepa's testimony did not violate any specific
constitutional provision or deprive Smith of a fair trial.

"Smith submits that had the state gone ahead and introduced
expert testimony regarding child behavior which evidenced sexual
abuse, such as that exhibited by the two children here,
[Mazepa's] testimony would have been perfectly admissible."
(Memo. in Support of Amended Habeas Pet. at 65.)  Yet, contrary
to Smith's contention (Obj. at 8 n. 2), expert testimony is not
required in every case.  Smith cites <u>United States v.
Tsinnijinnie</u>, 91 F.3d 1285, 1289 (9th Cir. 1996), <u>United States
v. Peralta</u>, 941 F.2d 1003, 1009 (9th Cir. 1991), <u>United States v.
Figueroa-Lopez</u>, 125 F.3d 1241 (9th Cir. 1997), and <u>Almeida v.
Correa</u>, 465 P.2d 564 (1970) in support of her position that
foundational expert testimony was required for Mazepa's testimony

to be admissible.  These cases do not show that expert testimony
is required under the circumstances of the present case.  Courts
have admitted expert testimony to explain behavior seemingly
inconsistent with behavioral norms.  See Batangan, 799 P.2d at
51-52 ("Expert testimony exposing jurors to the unique
interpersonal dynamics involved in prosecutions for intrafamily
child sexual abuse, may play a particularly useful role by
disabusing the jury of some widely held misconceptions").  But,
as the state trial court determined, expert testimony is not
required to explain behavior, such as that testified to by
Mazepa, that a lay person would normally associate with a victim
of sexual assault.

The Tsinnijinnie holding is not on point. In Tsinnijinnie,
the court upheld the admission of expert testimony regarding the
timing of the children's reports of sexual abuse.  Tsinnijinnie,
91 F.3d at 1289.  The court upheld the admission of the expert
testimony, over the defendant's objection, because it was not
offered to bolster the child victim's credibility, but rather to
explain why children may be intimidated by physical abuse and
deterred from complaining against the abuser.  Id.  As in United
States v. Peralta, 941 F.2d 1003, 1009 (9th Cir. 1991), the
expert testimony was helpful to the jury because it explained the
child victim's seemingly inconsistent behavior.

United States v. Figueroa-Lopez, 125 F.3d 1241, 1244 (9th

Cir. 1997) is likewise distinguishable from the present case.
Here, unlike in the <u>Figueroa-Lopez</u> case, the children's acting
out behavior as observed by Mazepa did not require expert
testimony.[2]  Sexualized behavior, nightmares, and bedwetting are
behaviors a layperson would normally expect of a child sex
assault victim.  <u>See</u> <u>United States v. Juvenile</u>, 347 F.3d 778, 781
(9th Cir. 2003) ("Age-inappropriate sexual knowledge is a common
symptom among sexually abused children, along with other
sexualized behaviors, anxiety, depression, withdrawn behavior,
somatic complaints, aggression, and school problems.") (citing
Kathleen A. Kendall-Tackett, Linda Meyer Williams, & David
Finkelhor. Impact of Sexual Abuse on Children: A Review and
Synthesis of Recent Empirical Studies, 113 Psychological Bulletin
1, 165 (1993)).

The case of <u>United States v. VonWillie</u>, 59 F.3d 922, 929
(9th Cir. 1995), cited in, and distinguished by, the <u>Figueroa-
Lopez</u> court, illustrates this point.  In the <u>VonWillie</u> case, the
court considered the admissibility of lay witness testimony about
the nexus between drug trafficking and possession of weapons.
The agent testified that it was common for drug traffickers to
possess and use weapons in order to protect drugs and intimidate

---

[2]  In fact, it is questionable whether the trial court
properly classified Mazepa's testimony as lay *opinion* testimony
under H.R.E. 701 in the first instance. Mazepa's testimony
consisted primarily of her observations of the children's
behavior, not of her own opinions or inferences.

buyers, that one of the guns found was particularly intimidating,
and that drug traffickers commonly kept a weapon near their
drugs. Id. at 1245. The court admitted the agent's observations
as lay witness opinion because they were "common enough and
require[d] such a limited amount of expertise." Id. Just as in
the VonWillie case, Mazepa's testimony as to observations of the
children's behavior, even if considered lay opinion testimony
under F.R.E. 701, are within common knowledge.

Finally, Almeida v. Correa, 465 P.2d 564 (1970), does not,
as Smith contends, teach that expert testimony was required to
establish the relevancy of Mazepa's testimony. Almeida is
inopposite. Almeida involved a paternity suit and "resemblance
evidence". In addressing the evidence's admissibility, the
Almeida court started with the general proposition that "[t]he
introduction of resemblance evidence as proof of paternity is
justified only if general or specific resemblance of a child to
his parent has a basis in scientific fact." Id. at 598. As
discussed above, Mazepa's observations are relevant to the
charges and did not require expert testimony. Unlike in the
instance of a paternity suit where some specific scientific
evidence connecting the particular child to the particular
defendant is required, in this case, there is sufficient general
evidence to connect, and render relevant, Mazepa's observations
of the children's sexualized behavior, nightmares, preoccupation

31

with safety, and bedwetting, to the issue of sexual abuse.

The F&R cited <u>United States v. Peralta</u>, 941 F.2d 1003 (9th Cir. 1991), and <u>United States v. Juvenile</u>, 347 F.3d 778 (9th Cir. 2003), for the proposition that "the probative value of Mazepa's testimony regarding the girl's behavior and the reasonable inferences that the prosecutor made based on this testimony was not 'beyond the knowledge of the average layman.'" (F&R at 39.) Smith's objections to the F&R's citation to these cases is misplaced.  The F&R did not, as Smith contends, misinterpret the entire holding of <u>Peralta</u>. (Obj. at 9.)  Rather, the F&R merely cites <u>Peralta</u> for the standard used in determining when expert testimony is required.  Expert testimony is appropriate when evidence is "beyond the knowledge of the average layman."

The F&R correctly found that Mazepa's testimony was not beyond the knowledge of the average layman.  Mazepa testified as to various behaviors she observed such as instances in which Jana was observed touching Alisha's vagina; Jana sitting on the arm of a recliner, gyrating repeatedly; Jana putting a McDonald's "Happy Meals" figure into her vagina; and Jana foundling herself while watching T.V.  (F&R at 35.)  As the state trial court f+ound, it was within the province of the jury to weigh the significance of this behavior.  A layperson could, based on such testimony, determine whether such behavior tended to show that the children had suffered sexual abuse.

Smith's objections to the F&R's citation to <u>Juvenile</u> are similarly misplaced.  (Obj. at 9.)  The F&R cites <u>Juvenile</u> for the general proposition that age inappropriate sexual knowledge is a common symptom among sexually abused children.  (F&R at 39.) This lends support to the trial court's decision to admit Mazepa's testimony without expert testimony.

In sum, the state court's decision to admit Mazepa's testimony as to her own observations of the children's "acting out" behavior absent foundational expert testimony is entitled to great deference.  Smith has not shown that the trial court's decision to admit Mazepa's testimony was contrary to clearly established federal law as determined by the Supreme Court of the United States or that it rendered Smith's trial fundamentally unfair.

**2.    Prosecutor's reference to the children's "acting out" behavior in rebuttal argument at closing did not so infect the trial with unfairness as to make the resulting conviction a denial of due process**

During closing argument, defense counsel argued that the children had been "programmed" to testify in the manner in which they did and that the children's testimony was motivated by their desire to live with Mazepa.  (Trial Transcript, dated Sept. 24, 1993, at 23-26, 45, 49.)  In rebuttal, the trial court permitted the prosecutor, over co-defendant Nakamura's objection, to argue that the children's nightmares, sexualized behavior, bedwetting, and preoccupation with safety rebut the defendants' theory that

33

the children had been programmed and suggest that such behavior
might be consistent with the behavior of someone who has been
sexually assaulted.  (<u>Id</u>. at 71-72, 77.)  In overruling
Nakamura's objection, the trial court was sensitive to the lack
of expert testimony and appropriately cautioned the jury:
"Knowing that there is no evidence for the jury from an expert[,]
I will permit [the trial prosecutor] to draw reasonable
inferences as will the jury depending on credibility of questions
to resolve.  So I will overrule [Nakamura's] objection with that
caution to the jury."  (<u>Id</u>. at 72.)

        Prosecutorial misconduct gives rise to a constitutional
claim only if the misconduct deprived the defendant of a fair
trial.  <u>See</u> <u>Greer v. Miller</u>, 483 U.S. 756, 765 (1987).  Smith has
not shown that the statements made by the prosecutor in rebuttal
argument at closing so infected the trial with unfairness as to
make the resulting conviction a denial of due process.  <u>See</u>
<u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986).  Contrary to
Smith's objection, the prosecutor was not permitted to act as a
prosecutor and a witness in the same case and testify without
being subject to cross-examination.  (Obj. at 11.)  The
prosecutor simply suggested reasonable inferences based on
Mazepa's admissible testimony.  "Counsel are given latitude in
the presentation of their closing arguments, and courts must
allow the prosecution to strike hard blows based on the evidence

34

presented and all reasonable inferences therefrom."  <u>Ceja v.</u>
<u>Steward</u>, 97 F.3d 1246, 1253 (9th Cir. 1996) (citation and
internal quotation marks omitted).  Moreover, the prosecutor's
reference to Mazepa's testimony was limited and the trial court
took all of the usual precaution of instructing the jurors that
closing arguments are not evidence.  (Trial Transcript, Sept. 24,
1993, at 3.)

### _Ground Five_ - _Smith's Five Consecutive Life Sentences_

At the start of the sentencing proceeding, the State had
requested that the trial court impose an extended consecutive
sentence.  (Trial Transcript, dated Nov. 23, 1993 at 9, 11.)
Hawaii's consecutive sentence statute, H.R.S. § 706-668.5, also
provided Smith notice that the court could impose consecutive
sentences.  <u>See</u> <u>State v. Vinge</u>, 916 P.2d 1210, 1223 (Haw. 1996).

The state court sentenced Petitioner to five consecutive
life terms in Counts 1, 2, 3, 13, and 14 and five extended ten-
year terms of imprisonment in Counts 4, 5, 15, 16, and 17 to be
served concurrently.  In her amended Petition, Smith "submits
that the manner that the sentencing court imposed consecutive
life sentences utterly failed to comply with state procedural law
which afforded her due process protections before the state court
could impose such a sentence."  The F&R found that the trial
court followed the processes set forth in H.R.S. § 706-606 and §
706-668.5 in imposing an extended-term sentence and consecutive

sentences and did not violate clearly established federal law as set forth by the Due Process Clause of the United States Constitution.  The F&R also found that the trial court's imposition of an extended-term sentence did not violate <u>Apprendi</u> because <u>Apprendi</u> does not apply retroactively to cases on collateral review.  Smith objects to both findings.

**1. Due Process**

Smith first objects to the F&R's finding that the trial court's imposition of five consecutive life sentences based upon consideration of the factors set forth in H.R.S. § 706-606 did not violate her due process rights.  Smith acknowledges that the record demonstrates that the state sentencing court examined and considered the required factors under H.R.S. § 706-606 in imposing an extended sentence under Hawaii's *extended* term law, H.R.S. § 706-664.  (Obj. at 13.)  Smith contends that the state court did not consider the required factors under H.R.S. § 706-606 when imposing Smith's five *consecutive* life sentences, under H.R.S. § 706-668.5, Hawaii's consecutive sentence statute.[3] (<u>Id</u>.)  In other words, Smith contends that the state court should have, but did not, undertake to explicitly state a separate analysis of each of the H.R.S. § 706-606 factors in ordering that

---

[3]  Hawaii's consecutive sentence statute, H.R.S. § 706-668.5(2), directs a court, in determining whether a sentence should be consecutive or concurrent, to consider the factors set forth in H.R.S. § 706-606.

36

Smith's sentence be served consecutively as opposed to
concurrently.

As the Magistrate Judge found, the record reflects that the
trial court considered the factors mandated by H.R.S. § 706-606
before imposing Smith's consecutive extended-term life sentences.
The Court has reviewed the transcript of the sentencing hearing
before the state court held on November 29, 1993, and finds that
the judge reviewed the pre-sentence report and considered all of
the factors set forth in H.R.S. § 706-606.  Although there is "no
requirement that the court expressly recite the factors set forth
in H.R.S. § 706-606", State v. Sinagoga, 918 P.2d 228, 235 (Haw.
1996), the record shows that the trial court judge stated she had
considered all of the factors and commented on a number of the
factors in imposing Smith's extended-term consecutive sentences.

In sentencing Smith to consecutive life terms, the trial
court stated, in part:

> The Court, accordingly, having review the
> presentence report, the arguments of counsel and the
> specific sentencing alternatives posed to the Court and
> advocated by both counsel for the prosecution and defense
> counsel, will conclude that, first of all, it is proper
> for this Court to grant the Motion for Extended Term and
> it is hereby granted.  This is based on the factors
> considered by the Court to include the defendant's
> apparent poor prognosis for positive behavioral changes;
> secondly, the overall need to insure public safety,
> thirdly, her utter lack of victim empathy which further
> will be a danger to the community inasmuch as she has
> failed to appreciate the imminent or serious threat she
> poses to members of the community, especially children;
> her extensive history and admission of substance abuse
> that causes her to be more prone to acting impulsively.

Further, the trauma and the emotional and irreparable injury to the very youthful victims who were her children.  Further, her flagrant abuse of her trust as mother to these children.  And lastly, her inability to have served or met her duty as the lawful parent of these children.

The Court, as to the counts in question, Counts 1, 2, 3, 13, and 14, which are the Sex Assault in the First Degree, the extended term will be from the 20 years to the life imprisonment with the possibility of parole. ***Those terms the Court deems will be running consecutively.***

With respect to Counts 4, 5, 15, 16, and 17, which would be the Class C Sexual Assault in the Third Degree, the Court will exercise its discretion to run these concurrently.

*     *     *     *

[Smith], after the Court has weighted all of the factors, I am basing the decision of the Court as not being an unduly excessive penalty or punishment, which I believe is just given the factual allegations that were proven beyond a reasonable doubt in this courtroom.  I would like the record to indicate that they represent an outrage to the moral sense of our community and also shock the conscience of the community.  And it is in that light that I do not believe the life terms that are being imposed are excessive and that the key factors considered by the Court are the nature of the offenses and the harm, the irreparable harm done to the victims and the danger you pose to the community.

(Trial Transcript, dated Nov. 29, 1993, at 27-30.)

The state court's Extended Term Order also indicates that

the court considered all relevant factors set forth in H.R.S. §

706-606.  (Exh. O.)  In the Extended Term Order, the state court

stated that it had "judiciously considered all of the relevant

sentencing factors set forth in H.R.S. Section § 706-662(4)(a)

and (b)."  (Exh. O at ¶ 25.)  In considering these factors, the

Extended Term Order expressly found that the circumstances warranted imposition of an "extended consecutive term" of imprisonment. (Exh. O. at ¶¶ 26-32.)  The state court concluded: "[a]fter applying all of the factors set forth in H.R.S. § 706-606, this court determines that the extended consecutive term imposed is the appropriate sentence in this case." (Exh. O.)

Contrary to Smith's contention, there is no evidence that the trial court only considered the H.R.S. § 706-606 factors in relation to Smith's extended-term sentence and not in relation to its decision to impose the sentences consecutively.  The trial court's imposition of extended-term consecutive sentences was not an unreasonable application of, or contrary to, clearly established federal law.

        2.   **Apprendi** claim

Smith next objects to the F&R's finding that because Apprendi is not retroactive it does not apply.  Smith, as she must, concedes, that Apprendi does not apply retroactively to cases on collateral review.  See United States v. Sanchez-Cervantes, 282 F.3d 664, 668-671 (9th Cir. 2002). (Obj. at 16.) Recognizing this, Smith contends that the State waived this argument by not raising the Apprendi retroactivity issue as a defense to Smith's claim in the proceedings before the state court.  (Obj. at 16.)

Smith's argument is without merit.  Smith only first raised

her _Apprendi_ claim in her second petition for post-conviction relief pursuant to Hawaii Rule of Penal Procedure 40 filed in the state circuit court, almost five and a half years after her direct appeal and two years after the United States Supreme Court decided _Apprendi_. (Exh. HH.) The circuit court denied Smith's second Rule 40 petition. (Exh. JJ.) The circuit court denied Smith's _Apprendi_ claim on the merits. (_Id_.) As the prevailing party, the State was under no obligation to argue that _Apprendi_ did not apply retroactively to Smith's claim. _See Padilla v. Terhune_, 309 F.3d 614, 618 (9th Cir. 2002) (although the "residual trustworthiness" doctrine was not litigated below, the issue was not waived because as the prevailing party, the state had no reason to argue that statement was also trustworthy, separate and apart from qualifying as a statement against interest). The State did not waive its argument that _Apprendi_ does not apply retroactively to cases on collateral review.

### _Ground Six - Apprendi Claim_

Ground Six of Smith's amended Petition fails because, as discussed above and in the F&R, _Apprendi_ does not apply retroactively to cases on collateral review.

### CONCLUSION

For the foregoing reasons:

(1) the Court **ADOPTS** the March 9, 2007 F&R, supplementing it as set forth above.

///

///

///

    (2)   Smith's Petition is **DENIED**.

IT IS SO ORDERED.

DATED:      September 14, 2007, Honolulu, Hawaii.



   **/s/ Helen Gillmor**
Chief United States District Judge

---

REGINA SMITH v. JOHN F. PEYTON, JR., et al.; Civ. No. 04-00091;
**ORDER ADOPTING AND SUPPLEMENTING MAGISTRATE JUDGE'S FINDINGS AND
RECOMMENDATION TO DENY AMENDED PETITION FOR WRIT OF HABEAS CORPUS**